**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Appellant–Defendant,**

v.

**Gregory S. SCHAFER and Shane Schafer b/n/f Gregory S. Schafer, Appellees–Plaintiffs.**

No. 37A05–9201–CV–19.

Court of Appeals of Indiana, Fifth District.

Aug. 24, 1992.

Robert M. Baker, III, Frederick D. Emhardt, Miller, Woddell & Baker, P.C., Indianapolis, for appellant-defendant.

Timothy S. Schafer, Schafer and Schafer, Merrillville, for appellees-plaintiffs.

BARTEAU, Judge.

## CASE SUMMARY

This is an interlocutory appeal from the trial court's order of January 9, 1992 granting the motion of plaintiffs-appellees Gregory and Shane Schafer for declaratory judgment, declaring unconstitutional certain rules of the Indiana High School Athletic Association ("IHSAA"—a not for profit corporation that governs secondary school sports in Indiana, with the majority of Indiana high schools as its members), and enjoining IHSAA from prohibiting Shane Schafer ("Schafer") from participating in interscholastic sports. The appeal is interlocutory because the January 9 order reserved for future consideration the issue of damages. We affirm in part, reverse in part, and remand.

## FACTS

During the 1990–91 school year, Schafer was a junior at Andrean High School in Merrillville. He played on Andrean's basketball team that school year, seeing action in both the fall 1990 and spring 1991 semesters. The basketball season, roughly speaking, takes place during the last half of the fall semester and the first half of the spring semester. Andrean is an IHSAA member.

Schafer withdrew from school in the spring of 1991, at the end of the basketball regular season, just before the sectionals of IHSAA's statewide tournament, suffering from a serious sinus infection. This infection had apparently been present since the fall semester—although Schafer had passed a physical at the start of basketball season, he had complained to his family doctor on three occasions during the fall semester of a stuffy nose and headache (the sinusitis bacteria emit gas, pressuring the brain, causing headache) and the treating physician wrote in June, 1991 about the course of the illness "over the past six to nine months...."

Thus, the illness may have started as early as September, 1990, and may have hindered Schafer's academic performance, because in the fall semester he made very poor grades. There were no spring grades, due to Schafer's withdrawing. Not completing the spring semester had a ripple effect, in that Schafer had been enrolled in year-long courses, in which the fall coursework is a prerequisite to the spring segment. Because the spring portion of the year-long courses is difficult for a student not coming fresh from the fall semester, and because the illness may have affected Schafer's academic performance in the fall, Andrean permitted him to repeat his entire 1990–91 junior year in the 1991–92 school year.

In June, 1991 Schafer wrote to IHSAA to request that 1990–91 not count against his eligibility for interscholastic athletics. The request, in effect, sought relief from the operation of subparts C—12-3 ("Rule 12-3") and C—12-4 ("Rule 12-4") of IHSAA's Rule 12 on "Enrollment and Attendance." Rules 12-3 and 12-4 conjunctively limit athletic eligibility to the ordinary eight semesters of high school. Rule 12-3 states: "After being enrolled 16 or more school days in each of 4 fall semesters, a student shall be ineligible for further participation during any fall semester." Similarly, Rule 12-4 states: "After being enrolled 16 or more school days in each of 4 spring semesters, a student shall be ineligible for further participation during any spring semester."

Although Schafer had been enrolled more than sixteen days in both the fall 1990 and spring 1991 semesters, he retained a prospect of relief under Rule C—12-2 ("Rule 12-2"). That rule states that a semester will not be counted, even after sixteen days of enrollment, if the student

withdrew from school due to serious illness, unless the student had participated in 20% of the scheduled contests in a given sport.[1]

By letter of September 11, IHSAA's Assistant Commissioner Ray Craft refused Schafer's request. Craft reasoned thusly:

Shane finished the first semester but withdrew during the second semester. The game records show that Shane participated in more than 20% of the authorized season contest in that sport. Therefore by [Rule 12–2] he is not entitled to an additional year and an exception cannot be granted.

Craft's letter goes on to explain that an exception was not available because of subpart 17–8.1 of Rule C—17–8 ("Rule 17–8.1"), which excludes all of Rule 12 from the Commissioner's general authority to waive a rule in hardship cases.

Andrean appealed Craft's decision to IHSAA's Executive Committee. At a hearing on October 18, Assistant Principal Kauffman of Andrean stated that Schafer was repeating most of his fall 1990 courses during fall 1991, as well as taking a few new courses, and had received no credit for the entire 1990–91 school year. This testimony piqued the interest of IHSAA Commissioner C. Eugene Cato, who remarked that such non-credit might limit Schafer's athletic eligibility pursuant to Rule C—18–1 ("Rule 18–1") on "Scholarship," which makes past academic success and current progress a prerequisite to participation in IHSAA sports, by stating, in pertinent part:

To be eligible scholastically, students must have received passing grades at the end of their last grading period in school in at least five full credit subjects·or the equivalent and must be currently enrolled in at least five full credit subjects or the equivalent. Semester grades take precedence.

Following Rule 18–1 in the IHSAA bylaws is a section labelled "Interpretation," with eight subparts, including 18–1.5 ("Rule 18–1.5"), which states "[a] subject for which credit has previously been granted may not, if repeated, be counted to satisfy this rule." Although· Schafer was taking a few new courses during fall 1991, his non-repeat work did not amount to five full credits.

Cato also opined that Andrean had broken the rules by allowing Schafer to play basketball during the spring of 1991. Because Schafer had not received credit for fall 1990, he was ineligible for spring 1991, so Andrean should have kept him off the team. Kauffman defended Andrean by explaining that at the start of the spring semester Schafer had the credits for fall, but in March or April the Andrean administration had decided to eliminate the fall credits because of Schafer's illness.

The Executive Committee denied the appeal. The ruling affirms Craft's decision, but is silent as to Cato's comments on the applicability of Rules 18–1 and 18–1.5. In other words, the Executive Committee's action left Schafer eligible during his next two semesters, the first being the then-current fall of 1991.

However, Cato apparently made a parol ruling on November 1 that Schafer was ineligible for the fall of 1991 because of Rules 18–1 and 18–1.5. Presumably, Cato interpreted Rule 18–1.5 to mean that a class "for which credit has previously been granted" includes even a class for which credit was given but then rescinded.

---

1. Rule 12–2 states in pertinent part:

"Enrollment of 16 or more school days or participation in an interschool contest shall count as a semester of enrollment. Provided, however, if after fifteen days a student is seriously injured or suffers from serious illness which necessitates the student's complete withdrawal from school for that semester and the student does not receive any academic credit for that semester, then that semester shall not count as a semester of enrollment under this rule. Serious illness does not include any illness which is caused in whole or in part by a chemical dependency, e.g. the illegal consumption of drugs or alcohol. Provided further, if said injury or illness should occur after the student has participated in 20% or more of the Association's authorized contest season, in the sport, then this exception shall not apply and said semester shall be counted as a semester of enrollment in that sport."

Again, there was an appeal, with a hearing on November 15. Kauffman again testified that Schafer was taking a few new courses, but repeating four courses he had taken in fall 1990. Kauffman explained further that Schafer would be graded anew in the repeat coursework, unless he failed a course that he had passed in fall 1990. However, a new wrinkle appeared in Kauffman's testimony—because rules of the state department of education prohibit rescission of credit once awarded, and because Schafer had previously received credit for fall 1990, the repeated courses would not earn credit. Thus, Schafer's case seemed, even with a strict interpretation, directly under the dictates of Rules 18–1 and 18–1.5: because he would not earn credit for his repeat coursework, Rule 18–1.5 eliminated those classes from the five full credit subjects required by Rule 18–1, leaving him academically ineligible during fall 1991.

At the November 15 hearing, Schafer argued that ruling him ineligible for fall 1991 under Rules 18–1 and 18–1.5 unfairly deprived him of a semester's eligibility, because if he had stayed out of school during the fall semester 1991, he would have been eligible upon returning to school in spring 1992, and then again in fall 1992: in spring 1992 he would have been taking the second semester of the year-long courses for which he had not received credit in the spring of 1991, because he withdrew before the end of the semester, and therefore, Rule 18–1.5 would not have been pertinent, and under Rule 18–1 ("students must have received passing grades at the end of their last grading period") Schafer would be eligible, because his last grading period was the mid-term grades in spring 1991, at which time he had passing grades; and, assuming he received passing grades for spring 1992, he would be eligible for fall 1992. But, by attending in fall 1991, he was being ruled eligible for spring 1992 only. Similarly, if he had failed his courses in fall 1990, he would not have earned credit, and would therefore have been able to repeat the courses in fall 1991 without being ruled academically ineligible for sports. The decision to return in fall 1991 reflected the judgment of Schafer's parents and the Andrean administration that such was in Schafer's best interest academically and socially.

The Executive Committee upheld "the decision ... of November 1, 1991 ... [that Schafer] is ineligible for the fall 1991 semester ... in that he is not currently enrolled in five (5) full credit subjects...." The entry cited Rules 18–1, 18–1.5 and 17–8.1, which excludes all of Rule 18, like Rule 12, from the Commissioner's waiver authority.

Even before the hearing on November 15, Schafer had filed a complaint in Lake Superior Court naming as defendants IHSAA, Craft, and Cato. The complaint, filed on November 12, did not contest the October 18 decision on Rule 12, but instead challenged the decision of November 1 on Rules 18–1 and 18–1.5, and requested unspecified "injunctive relief" prohibiting IHSAA from ruling Schafer ineligible or penalizing Andrean, as well as costs, damages, and a jury trial.

On November 13, Schafer filed an amended complaint, substantively unchanged from the complaint, but dropping Craft and Cato as defendants and adding Andrean, and a motion for temporary restraining order and preliminary injunction. That day Judge James Richards of Lake Superior Court granted the temporary restraining order, and set a hearing on the preliminary injunction for November 19.

At that hearing, Cato testified, and dealt Schafer a new setback, by reference to interpretation subpart 18–1.7 ("Rule 18–1.7"): "Students who are ineligible scholastically at the end of a grading period or semester, are ineligible for the following grading period." Cato theorized that because Schafer would receive no credit for fall 1991, he would be ineligible at the end of that semester, thus rendering him ineligible under Rule 18–1.7 at the beginning of the spring 1992 semester, a disqualification that could not be removed until Andrean issued mid-term grades at the ninth week of the spring semester. The effect of Cato's new approach was to prohibit regu-

lar season basketball for Schafer in the 1991–92 school year.

In an order dated November 19, Judge Richards dissolved the temporary restraining order and denied a temporary injunction.[2] Judge Richards also granted IHSAA's Ind.Trial Rule 76 motion for change of venue. The case was venued to Jasper County, Raymond D. Kickbush, Special Judge. Judge Kickbush set a hearing for January 6, 1992.

At some point before the hearing, Schafer sought leave to file a second amended complaint. The record lacks a motion for such leave, but its existence can be deduced from IHSAA's December 17 "Objection to motion for leave to amend complaint," which specifically objects to Counts I and II of a proposed second amended complaint. The record contains such a second amended complaint, in three counts. Count I prays for a declaratory judgment on the constitutionality of Rule 12–2 and Rule 18–1.5. Count II casts Schafer as the aggrieved third party beneficiary of a membership contract between Andrean and IHSAA. Count III alleges IHSAA had engaged in willful and wanton interference, undue influence, coercion, misrepresentation, fraud, and unauthorized practice of law. All three counts request injunctive relief to block IHSAA from prohibiting Schafer from sports or penalizing Andrean, and damages. There is again a request for jury trial.

Judge Kickbush conducted a hearing on January 6. IHSAA unsuccessfully objected to the taking of any evidence, on the grounds that there had been no ruling on Schafer's motion for leave to amend the amended complaint. Kauffman and Cato testified, and the transcripts of the two IHSAA Executive Committee hearings were admitted into evidence.

**2.** Judge Richards seems to have disagreed with Cato's Rule 18–1.7 theory. The entry states:
 [T]he Court finds that [Schafer] is not entitled to a temporary injunction enjoining [IHSAA] from prohibiting participation by [Schafer] in interschool competition in the current semester ending in January at Andrean High School.

**DECISION BELOW**

On January 9, Judge Kickbush entered an order that (1) overruled IHSAA's objection to Schafer's request for leave to file the second amended complaint and granted leave to file; (2) denied IHSAA's motion to vacate or continue the January 6 hearing; (3) denied IHSAA's motion to dismiss for failure to state a claim; (4) denied IHSAA's motion to strike jury demand, and bifurcated the case, with Schafer's request for injunctive relief to be tried to the court, reserving for jury trial the question of damages; (5) granted Schafer's motion for declaratory judgment; and (6) enjoined IHSAA from ruling Schafer ineligible or punishing Andrean. Pursuant to Schafer's request, the trial court entered special findings of fact and conclusions of law, in pertinent part:

12. The purpose of Rule C–18–1 and C–18–1.5 is to prevent students from obtaining longer eligibility for athletic participation.

13. These rules, as they apply to [Schafer], are arbitrary and capricious, inasmuch as he has been denied an opportunity to qualify to participate in athletic competition due to no fault of his own, namely, his illness.

14. The referred to IHSAA rules do not have a fair and substantial relationship between the prohibiting of [Schafer] from participating in athletics due to his withdrawal because of his health problems, necessitating his repeating fall courses which were one year courses (and not available the following semester) on the one hand, and the IHSAA's desired objective of promoting wholesome, interschool competition which is subservient to and complementary to academic or curricular functions of the member schools on the other hand.

[Schafer] appears to be entitled to take part in athletic competition beginning in the second semester at Andrean in January of 1992; but there exists no emergency for the granting of a temporary restraining order or temporary injunction at this time.
Record at 401–02.

15. The absurdity of the application of this rule to [Schafer's] situation is highlighted by the Commissioner of the IHSAA acknowledgement [sic] that [Schafer] would be entitled to participate in athletics in the spring semester 1992 had he failed all of the courses he was taking during the fall semester. Further, since, however, [Schafer] passed those courses, he is now being punished by his ineligibility versus a student that would have failed those courses.

16. Another alternative available to [Schafer] would have been to withdraw from the fall semester, which would have, under IHSAA rules, rendered him immediately eligible to participate in athletics in the spring 1992 semester. Such a result is not in the best academic interests of a student by encouraging failure and not being present in school as required by statute.

17. The application of the aforementioned rules of ineligibility bar Shane Schafer, and other students similarly situated, from athletic competition, and as such, those rules are unreasonable, arbitrary and capricious.

18. The IHSAA Rules, as they apply to this plaintiff and his particular previous medical condition, and his subsequent ineligibility determination are not fair and penalize Shane Schafer in a way that the Rules never intended.

19. As the Court in *Anderson v. Indiana High School Athletic Association,* ([S.D.Ind.]1988) 699 Fed.Supp. 719, stated: "... the integrity and goals of the IHSAA will not be tarnished by granting such reasonable exceptions." Such is the case at bar.

## CONCLUSIONS OF LAW

1. The law is with the plaintiffs, Gregory S. Schafer and Shane Schafer and not with the defendants.

2. The IHSAA Rules and Regulations above referred to are overly broad, overly inclusive, arbitrary, and capricious and do not bear a fair relationship to the intended purpose of the rules, and, ac-cordingly, they are held to be in violation of equal protection and due process.

3. The Court declares Shane Schafer not to be ineligible for athletic participation by virtue of the aforementioned IHSAA Rules.

## ORDER OF COURT

IT IS, THEREFORE, ORDERED BY THIS COURT that the defendants Andrean High School and [IHSAA] are hereby ordered from prohibiting Shane Schafer from participating in interschool competition athletics beginning with the spring semester of 1992 beginning on January 13, 1992, and this Court further prohibits [IHSAA] from taking any action whatsoever against [Andrean] as a result of the participation of plaintiff Shane Schafer in athletics pursuant to this Court's order.

SO ORDERED THIS 9TH DAY
OF JANUARY, 1991.

Record at 7–10. The "1991" in the final sentence of the order is no doubt supposed to be 1992.

## PROCEDURAL POSTURE AND ISSUES ON APPEAL

On January 23, the trial court denied a motion to stay the injunction, but did certify its January 9 order for interlocutory appeal "in all respects." After a February 5 pre-appeal conference, this court accepted jurisdiction of issues (a)–(h) of IHSAA's request for certification of all issues for appeal, and issues (a)–(d) of IHSAA's pre-appeal statement and request for pre-appeal conference. On February 14, we denied IHSAA's motion to stay the injunction pending appeal.

As to our jurisdiction on appeal pursuant to the pre-appeal conference, issues (a)–(h) from IHSAA's request for certification of all issues for appeal are as follows:

(a) Did the trial court err in granting the declaratory judgment?

(b) Did the trial court err by holding a trial on a prayer for declaratory judgment prior to granting the plaintiffs' motion for leave to amend the amended

complaint to include a prayer for declaratory judgment?

(c) Did the trial court err by granting the plaintiffs leave to amend the amended complaint to include a count for declaratory judgment?

(d) Did the trial court err by holding a trial without proper notice and after advising the parties that a trial on the merits was not going to be held?

(e) Did the trial court err by granting a declaratory judgment on the same day leave was granted to permit the amended complaint to be amended to include a claim for declaratory relief and prior to the IHSAA instituting any pretrial discovery or filing· any pretrial motions?

(f) Did the trial court err by denying IHSAA's motion to strike jury demand?

(g) Did the trial court err by bifurcating the cause, making some issues triable to the court and other issues triable to the jury?

(h) Did the trial court err by granting the plaintiffs' request for jury trial on Counts II and III of the second amended complaint after the plaintiffs proceeded to trial to the court on Count I?

Issues (a)–(d) of IHSAA's pre-appeal statement and request for pre-appeal conference are:

(a) Is the interlocutory injunction contrary to the evidence?

(b) Is the interlocutory injunction contrary to law?

(c) Did the trial court err by failing to designate the purpose of the January 6, 1992 hearing prior to taking evidence, and, thereafter, granting an interlocutory injunction against the IHSAA?

(d) Did the trial court err by granting an interlocutory injunction without setting a bond?

## DECISION

## I. DECLARATORY JUDGMENT

(a) Did the trial court err by granting the declaratory judgment?

█ A trial court is authorized "to declare rights, status, and other legal rela-

tions whether or not further relief is or could be claimed," Ind.Code 34–4–10–1, provided the petitioner is a "person ... whose rights, status or other legal relations are affected...." I.C. 34–4–10–2. *See also* Ind.Trial Rule 57. Declaratory judgment is available to a student-athlete ruled ineligible for interscholastic athletics by IHSAA. *See IHSAA v. Raike* (1975), 164 Ind.App. 169, 329 N.E.2d 66.

### 1. A Threshold Question— Is There State Action?

█ In declaring that IHSAA Rules 18–1 and 18–1.5 violate "due process" and "equal protection," the trial court was likely referring to § 1 of the fourteenth amendment of the U.S. Constitution: "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

"No State shall" means that before a court can hold that a plaintiff has been denied due process of law or equal protection of the laws, there must have been an action by a state, or by some entity acting in such a fashion that its conduct can be fairly attributed to the state. As explained by the Supreme Court, "[e]mbedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny [under the fourteenth amendment], and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be." *National Collegiate Athletic Ass'n v. Tarkanian* (1988), 488 U.S. 179, 191, 109 S.Ct. 454, 461, 102 L.Ed.2d 469. To explain further, "[i]n the typical case raising a state action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *Id.*, 488 U.S. at 192, 109 S.Ct. at 462.

Whether IHSAA in adopting and enforcing its rules engages in state action is a threshold question, because if so, then IHSAA rulemaking and enforcement are subject to plenary judicial review. But if not,

then IHSAA is largely insulated from judicial review, pursuant to the principles of judicial deference to the affairs of voluntary associations set out in *State ex rel. Givens v. Superior Court of Marion County* (1954), 233 Ind. 235, 117 N.E.2d 553, *reh'g denied; STP Corp. v. United States Auto Club* (S.D.Ind.1968), 286 F.Supp. 146; and *United States Auto Club v. Woodward* (1984), Ind.App., 460 N.E.2d 1255, *trans. denied.*

In 1959, our supreme court held that IHSAA does not engage in state action, and that high school students do not have a constitutional right to participate in interscholastic sports. *State ex rel. IHSAA v. Lawrence Circuit Court* (1959), 240 Ind. 114, 162 N.E.2d 250. The latter holding was reaffirmed thirteen years later, in *Haas v. South Bend Community School Corp.* (1972), 259 Ind. 515, 289 N.E.2d 495, *reh'g denied.* However, *Haas* overruled *Lawrence* "insofar as it holds that the actions of the IHSAA are not judicially reviewable," 259 Ind. at 519, 289 N.E.2d at 497, with this reasoning:

> Regardless of how the IHSAA denominates itself as an organization, or how it characterizes its relationship with its member schools, it is abundantly clear that the association's very existence is entirely dependent upon the absolute cooperation and support of the public school systems of the State of Indiana. The enforcement of the rules promulgated by the IHSAA and adopted by the member schools may have a substantial impact upon the rights of students enrolled in these tax supported institutions, and we conclude, therefore, that the administration of interscholastic athletics by the IHSAA should be considered to be 'state action' within the meaning of the Fourteenth Amendment.

259 Ind. at 520, 289 N.E.2d at 498. We remark that *Haas* cited for support, among others, *Louisiana High School Athletic Ass'n v. Saint Augustine High School* (5th Cir.1968), 396 F.2d 224.

There are three post-*Haas* Indiana cases in which IHSAA rules were challenged as unconstitutional; all held state action existed. *See Sturrup v. Mahan* (1974), 261 Ind. 463, 468, 305 N.E.2d 877, 881 (holding IHSAA rules on eligibility for transfer students reasonable, but unconstitutional because "said bylaws ... sweep too broadly in their proscription and, hence, violate the Equal Protection Clause of the 14th Amendment"); *IHSAA v. Raike, supra* (IHSAA rule barring married students from sports violates equal protection); *Kriss v. Brown* (1979), 180 Ind.App. 594, 390 N.E.2d 193 (IHSAA rule on transfer eligibility not unconstitutionally vague and not a violation of freedom of speech, association, and travel).

In historical perspective, *Haas* and its progeny illustrate an expansive vision of what constitutes state action, based on the so-called "symbiotic relationship" theory of state action exemplified by *Burton v. Wilmington Parking Auth.* (1961), 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45. The symbiotic relationship idea has also been described as an "entanglement theory," and served in a line of cases from the 1970s to hold that the National Collegiate Athletic Association ("NCAA"), engages in state action. *E.g., Associated Students, Inc. v. NCAA* (9th Cir.1974), 493 F.2d 1251.

However, in 1982 the U.S. Supreme Court moved away from the entanglement theory of state action, setting out in *Rendell–Baker v. Kohn* (1982), 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 and *Blum v. Yaretsky* (1982), 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 a three-step analysis to determine the existence of state action. *Blum/Rendell–Baker* analysis envisions state action more restrictively than prior law. Indeed, after *Blum/Rendell–Baker*, several courts declined to follow the *Associated Students* line of NCAA cases and the high school athletic association cases, and pursuant to the new tripartite methodology, held that the NCAA does not engage in state action. *E.g., Arlosoroff v. NCAA* (4th Cir.1984), 746 F.2d 1019.

Closer to home, a federal court sitting in Indiana held IHSAA not engaged in state action, by first citing *Arlosoroff* and its progeny and finding the NCAA analogous to a state high school athletic association,

and then reaching the same conclusion after applying *Blum/Rendell–Baker* analysis. *Anderson v. IHSAA* (S.D.Ind.1988), 699 F.Supp. 719.[3] *But see Griffin High School v. Illinois High School Ass'n* (7th Cir.1987), 822 F.2d 671, 674 (holding association engaged in state action pursuant to entanglement theory and without citing *Blum/Rendell–Baker* ).

Several months after *Anderson v. IHSAA,* the NCAA question reached the U.S. Supreme Court in *NCAA v. Tarkanian, supra.* The question was whether the NCAA had engaged in state action by compelling the University of Nevada, Las Vegas ("UNLV"), unquestionably a state actor, into enforcing penalties sought by the NCAA against UNLV's Coach Tarkanian. The Court held that the NCAA had not engaged in state action, despite having attained its goal through the state university. The following passage explained why, and simultaneously, through its accompanying footnote 13, rejected an analogy to state high school associations:

> Clearly UNLV's conduct was influenced by the rules and recommendations of the NCAA, the private party. But it was UNLV, the state entity, that actually suspended Tarkanian. Thus the question is not whether UNLV participated to a critical extent in the NCAA's activities, but whether UNLV's actions in compliance with the NCAA rules and recommendations turned the NCAA's conduct into state action.

> We examine first the relationship between UNLV and the NCAA regarding the NCAA's rulemaking. UNLV is among the NCAA's members and participated in promulgating the Association's rules; it must be assumed, therefore, that Nevada had some impact on the NCAA's policy determinations. Yet the NCAA's several hundred other public and private member institutions each similarly affected those policies. Those institutions, the vast majority of which were located in States other than Nevada, did not act under color of Nevada law. It necessarily follows that the source of the legislation adopted by the NCAA is not Nevada but the collective membership, speaking through an organization that is independent of any particular State.

488 U.S. at 193, 109 S.Ct. at 462.

Footnote 13, placed at the end of the passage, states:

> The situation would, of course, be different if the membership consisted entirely of institutions located within the same State, many of them public institutions created by the same sovereign. See *Clark v. Arizona Interscholastic Association,* 695 F.2d 1126 (CA9 1982), cert. denied, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983); *Louisiana High School Athletic Association v. St. Augustine High School,* 396 F.2d 224 (CA5 1968)....

*Id.* The Arizona case cited in footnote 13 held that "the activities of the [Arizona high school athletic association] are so intertwined with the state that the regulations of the [association] must be considered state action." *Clark,* 695 F.2d at 1128. Notably, *Clark* postdates by five months, but does not cite, *Blum/Rendell–Baker;* rather, it relies on entanglement theory cases, including *Saint Augustine* and *Haas.*

The parties here have not cited a case interpreting footnote 13 in a high school athletic association case, nor did we find one.[4] There appears to be one post-*Tarkanian* high school case, *Burrows v. Ohio*

---

**3.** This is the case quoted in the lower court's finding of fact 19. Although holding IHSAA insulated from judicial review because of the absence of state action, *Anderson* continued on to denounce the association for its treatment of the plaintiff. The state action holding is not dispositive here, because the decision of a federal district court sitting in Indiana is not binding precedent for this court, *see Security Credit Acceptance Corp. v. State* (1969), 144 Ind.App. 558,

247 N.E.2d 825, *trans. denied,* nor is that of the 7th Circuit, even in cases involving federal constitutional law. *See Tilton v. Southwest School Corp.* (1972), 151 Ind.App. 608, 281 N.E.2d 117, *trans. denied.*

**4.** Electronic searching uncovered nineteen law review articles focused on *Tarkanian.* A scan of the nineteen revealed no discussion of footnote 13.

*High School Athletic Association* (6th Cir. 1989), 891 F.2d 122. *Burrows*, decided some 11 months after *Tarkanian*, holds that the OHSAA was not engaging in state action, citing *Arlosoroff* and its progeny, but not *Tarkanian*. That shortcoming enervates *Burrows*.

Schafer has reproduced footnote 13 in his appellee's brief, along with the discussion of the entanglement theory of state action in *Clark*. IHSAA in its reply brief has asserted that footnote 13 "references only whether the NCAA's source of legislation *could* be the basis for finding the NCAA was a state *actor*, but not whether the NCAA was involved in state *action*," and then argues that we should apply *Blum/Rendell–Baker* analysis and conclude that state action is not present here.

We disagree with IHSAA's approach. The high school cases have not turned on whether the members of an athletic association's executive board were public officials so that the association could be deemed a state actor, but not engaged in state action. Instead, inquiry has focused on the relationship of the association, as a monolithic entity, to the state.

■ It seems apparent that by citing *Clark* and *Saint Augustine* in footnote 13 of *Tarkanian*, the Supreme Court meant to indicate that pre-*Blum/Rendell–Baker* state action analysis is appropriate in cases involving high school athletic associations. Given footnote 13 and our existing state supreme court caselaw (*Haas* and *Sturrup*), we conclude that IHSAA in making and enforcing its rules engages in state action subject to judicial review.

### 2. Due Process

■ The court below held the IHSAA Rules in question do violate "due process," without specifying procedural or substantive due process. Assuming the reference is to procedural due process, the constitutional doctrine on this point is as follows:

In its most basic form, a procedural due process analysis requires the Court to ask three questions: (1) whether the defendant's acts constitute state action; (2) whether plaintiff has a protectable interest, defined as a deprivation of 'life, liberty, or property;' and, if the answer to both of the above questions is 'yes,' the Court must address (3) what due process is required by the Constitution. Assuming, arguendo, that this Court found state action in the present case, it must then turn to the second step of the analysis.

*Hawkins v. NCAA* (C.D.Ill.1987), 652 F.Supp. 602, 610.

Having found state action here, we now advance to the second step. The trial court's entry is silent as to what the protected interest is. Schafer does not identify one in his brief. Our supreme court in *Haas* stated "a student has no constitutional right to participate in interscholastic athletics." 259 Ind. at 521, 289 N.E.2d at 498. However, *Haas* also teaches that a program of interscholastic sports, *"after having been provided," id.* (original emphasis), must be administered without violation of the fourteenth amendment, at least if the case involves an equal protection claim arising from gender-based discrimination. In other words, participation in interschool sports, even if not a constitutional right, is perhaps a non-constitutional "privilege" protected by the fourteenth amendment. *See Goldberg v. Kelly* (1970), 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (welfare benefits); *but cf. Kriss v. Brown*, 390 N.E.2d at 199–201 (aggrieved student-athlete failed to convince this court that he was entitled to due process). Assuming for the sake of argument that Schafer was entitled to procedural due process, we cannot say he did not receive it; the IHSAA rules set out a process for review of the Commissioner's decisions by the Executive Committee, and Schafer had two such hearings. It appears that Schafer received both "adequate notice detailing the reasons for [IHSAA's decision of ineligibility]" and an "effective opportunity to defend ... by presenting his own arguments and evidence...." *Goldberg v. Kelly*, 397 U.S. at 267–68, 90 S.Ct. at 1020. Thus, there is no violation of procedural due process here.

Given that the trial court's order did not discuss IHSAA procedures, it seems proba-

ble that the reference to due process was to substantive due process, the constitutional doctrine of implementation by courts of the "promise of the Constitution that there· is a realm of personal liberty which the government may not enter." *Planned Parenthood of S.E. Penn. v. Casey* (1992), — U.S. —, —, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674. Assuming that participation in interschool sports might be protected by such a promise, as a first step, "classic constitutional methodology requires us to determine the appropriate standard of review...." *IHSAA v. Raike*, 164 Ind.App. at 177, 329 N.E.2d at 71.[5] The rules challenged here involve no regulation directed at a suspect class, such as race or national origin, or toward a fundamental right, such as freedom of association or interstate travel, nor are they based on gender or illegitimacy. *See Griffin High School, supra.* Therefore, review of these rules for conformity with substantive due process follows a rational basis test— the rules must " 'bear a rational relation to a legitimate government interest.' " *Id.*, 822 F.2d at 676 (quoting *Vaden v. Village of Maywood* (7th Cir.1987), 809 F.2d 361, 364, *cert. denied* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381). The rational basis test will also apply to equal protection analysis, to which we now turn; therefore, for the purposes of this case, substantive due process can be equated with equal protection—both doctrines are subsumed into the rational basis test.

### 3. Equal Protection

As explained by the 7th Circuit:

The usual standard of review for a statute or regulation challenged on equal protection grounds is the rational basis test. Under this test, legislation is presumed to be valid, and will be sustained as long as the classification drawn by the statute is rationally related to a legitimate state interest.

*Griffin High School*, 822 F.2d at 674 (citations omitted).

■ Ascertainment of the "state interest" here is facilitated by the inclusion in IHSAA's bylaws of statements of "Philosophy" preceding each rule. Rules 18–1 and 18–1.5 (collectively "Rule 18") seek to elevate academic endeavors over athletics. The Rule 18 philosophy statement opines that students who "cannot successfully carry and pass a normal minimum load of formal classroom work ... should postpone their commitment to interschool programs and concentrate ... on achieving in the classroom." [6]

Thus, Rule 18 is meant to establish the primacy of classroom education over participation in extracurricular athletics. Without hesitation we acknowledge that goal to

---

**5.** *Raike* contains an outstanding exposition of the standards of review in fourteenth amendment cases. *See also* Note, *"No Pass, No Play": Equal Protection Analysis Under the Federal and State Constitutions*, 63 Ind.L.J. 161, 164–68 (1987).

**6.** The importance of Rule 18 can be inferred from the fact that its Philosophy statement, alone of all others in the IHSAA bylaws, appears in boldface type. The text is as follows:

Realizing that the age group served by high school represents an interval in human development that can be turbulent and complex, the IHSAA is concerned with educating the 'whole person.' Therefore, the primary focus of any Indiana secondary school should be to provide educational opportunities for its students in accordance with the requirements set forth by the Indiana Department of Education. This academic training should progress toward an adequate education and ultimately in earning a high school diploma. Participation in inter-

school programs is a privilege for which reasonable standards should be established and enforced for the educational and personal welfare of the students who participate. If students cannot successfully carry and pass a normal minimum load of formal classroom work and simultaneously undertake the extra demands upon time and energy required by interschool participation, they should postpone their commitment to interschool programs and concentrate time and effort on achieving in the classroom. On the basis of these premises, minimum academic achievement requirements have been established by the IHSAA. Hopefully, the minimum academic eligibility standards adopted will:
a. promote higher educational standards;
b. upgrade student academic performance;
c. counter public criticism of schools for low expectations and low student achievement; and
d. enable schools to use athletic participation as a motivator for better classroom performance and achievement.

be a legitimate state interest. Indeed, we deem such an interest not merely legitimate, but laudable.

We also readily perceive that Rule 18 is rationally related to attainment of its commendable goal. By setting the threshold for athletic eligibility at satisfactory performance in five full credit courses, Rule 18–1 clearly elevates academic achievement over participation in sports. And, by disallowing credit for repeat courses, Rule 18–1.5 prevents student-athletes from reducing the amount of time devoted to studies in order to gain an advantage in athletics from extra time to practice. Both Rules help insure that student-athletes will pass enough classes to earn their diplomas, rather than spending their high school years engaged actively in sports but only desultorily and perfunctorily in studies.

Having found Rule 18 rationally related to a legitimate state interest, it could be said that our equal protection inquiry has run its course, and that reversal is in order. However, the Indiana Supreme Court opinion in *Sturrup v. Mahan, supra,* mandates further inquiry here.

■ The challenged IHSAA rule in *Sturrup* made a transfer student ineligible for one year unless the student's parents moved to the district of the school to which the student transferred. The plaintiff was a boy who had moved from the "demoralizing and detrimental conditions" of his parents' home in Florida to reside with his brother in Indiana. The trial court declined to enjoin the IHSAA from declaring him ineligible. This court reversed, holding the rule to violate the constitutional right to travel interstate. The supreme court, although in disagreement with that reasoning, also reversed the denial of eligibility, as follows:

> The objective of the IHSAA bylaws regarding transferee eligibility is to preserve the integrity of interscholastic athletics by minimizing recruitment, proselyting, and school 'jumping' for athletic reasons. We believe that such practices

at the high school level are despicable and odious and should, if possible, be eliminated by any reasonable method available. These transferee eligibility bylaws are *reasonably* related to the above-stated objective. That is to say, they are designed to and do, in fact, contribute to the realization of that goal. However, said bylaws are *unreasonable* in that they sweep too broadly in their proscription and, hence, violate the Equal Protection Clause of the 14th Amendment. [The rules in question] limit eligibility to those who move with their parents free of undue influence and to those whose move is necessitated by 'unavoidable circumstances' free of undue influence. All other transferring student-athletes, who cannot bring themselves within one of the above two categories, are *automatically* denied the opportunity to participate in interscholastic athletics for a period of one year. The bylaws, in essence, create an irrebuttable conclusion of law that all other transferees have been the victims of unscrupulous practices. This is precisely where the rules sweep too broadly, they create an over-inclusive class—those who move from one school to another for reasons wholly unrelated to athletics are grouped together with those who have been recruited or who have 'jumped' for athletic reasons. In short, the purported objective of the transferee eligibility rules is to prevent the use of undue influence and school 'jumping,' but their practical effect is to severely limit the transferee eligibility in general. The rules as presently constituted penalize a student-athlete who wishes to transfer for academic or religious reasons or for any number of other legitimate reasons. Surely, denying eligibility to such transferees in no way furthers IHSAA objectives.

261 Ind. at 468–69, 305 N.E.2d at 881 (original emphasis). Thus, *Sturrup* proceeded to an "overbreadth" analysis after having determined that the rule passed the rational basis test.[7] However, federal decisions

---

7. IHSAA argues in its reply brief that *Sturrup* employed an intermediate, or "sliding scale" lev-

el of scrutiny, rather than a rational basis test. Intermediate scrutiny looks to whether a rule

hold that under traditional equal protection scrutiny a rule may not be invalidated due to overbreadth. *See Hughes v. Alexandria Scrap Corp.* (1976), 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 ("a statutory classification impinging upon no fundamental interest ... need not be drawn so as to fit with precision the legitimate purposes animating it"); *Williamson v. Lee Optical* (1955), 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, *reh'g denied* 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 ("The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."). Illustrative of the principle is *Walsh v. Louisiana High School Athletic Association* (5th Cir.1980), 616 F.2d 152, *cert. denied* (1981), 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109, in which the rule made ineligible for one year students who entered high school in a different district from that where they attended junior high; its purpose being to stop recruiting of junior high athletes by high schools. The plaintiffs were students who had graduated from the city's seven Lutheran junior high schools, and planned to enter the one Lutheran high school, which unfortunately for them was in a different district from any of the junior high schools. Arguably, the rule was overbroad in reaching those students, but the court approved it nonetheless, finding it "rationally and logically related" to the legitimate purpose of deterring recruitment of student athletes. 616 F.2d at 160. *See also* Annotation, *Validity of Regulation of Athletic Eligibility of Students Voluntarily Transferring from One School to Another*, 15 A.L.R.4th 885 (1982 and Supp.1991) (listing sixteen decisions upholding transfer rules of high school athletic associations as against two invalidations, one of which was *Sturrup* ). Insofar as transfer rules do not raise problems of race—(*Saint Augustine* ), gender—(*Haas* ), or marital status—(*Raike* ) based classifications that have led courts to invalidate rules, the rules in question here are closer to transfer rules than to the other categories. Therefore, the weight of decisions from other jurisdictions counsels against subjecting these rules to overbreadth scrutiny.[8]

■ However, that *Sturrup* is out of the mainstream of caselaw on equal protection analysis does not alter our obligation as a state intermediate appellate court to follow the teachings of our state court of last resort. *See, e.g., Peoples Trust Bank v. Braun* (1983), Ind.App., 443 N.E.2d 875, 878–79, *trans. denied.* This obligation binds us even where our supreme court has explained neither the rationale nor the "constitutional implications" of its decisions. *Patton v. State* (1987), Ind.App., 507 N.E.2d 624, 626, *trans. denied.* Moreover, our supreme court has certainly demonstrated its awareness that an overbroad classification can pass equal protection muster. *See Sidle v. Majors* (1976), 264 Ind. 206, 218, 341 N.E.2d 763, 771, *reh'g denied, cert. denied* 429 U.S. 945, 97 S.Ct.

rests "upon some ground of difference having a fair and substantial relation to the object of the legislation...." *Raike,* 164 Ind.App. at 179, 329 N.E.2d at 73. IHSAA has not explained how such a distinction affects the validity of applying overbreadth analysis in a rational basis case. The argument must be deemed waived, because it was not presented in IHSAA's appellant's brief. *See Boucher v. Exide Corp.* (1986), Ind. App., 498 N.E.2d 402, *trans. denied.* In any event, we think it wrong. *Sturrup* lacks reference to caselaw on standards of review; the only statement thereof being that the rules in question were "reasonably" related to their goals. We need not answer this question, but the *Sturrup* standard is more a paraphrase of the rational basis test than of intermediate scrutiny, which being somewhat rare and unusual, would probably have merited discussion as to its applicability. *Cf. Raike, supra.*

8. The overbreadth analysis in *Sturrup* has been specifically criticized by courts in other States. *See Cooper v. Oregon School Activities Ass'n* (1981), 52 Or.App. 425, 440, 629 P.2d 386, 395, *reh'g denied* 291 Or. 504, 634 P.2d 1347 ("We are aware that one state court has used overbreadth as a basis for declaring a similar transfer rule to be in violation of the federal Equal Protection Clause. [citing *Sturrup* ]. With respect, we do not think that the Indiana court correctly applied federal law." (citing *Walsh, supra* )); *Berschback v. Grosse Point Pub. School Dist.* (1986), 154 Mich.App. 102, 113, 397 N.W.2d 234, 240, *trans. denied* 427 Mich. 851, 398 N.W.2d 1 ("*Sturrup* appear[s] to be [an] anomal[y] in this area.... [T]he focus on the 'overbroad' and 'overinclusive' nature of the rules by ... *Sturrup* ... to find a denial of equal protection departs significantly from traditional equal protection analysis.").

366, 50 L.Ed.2d 316. Therefore, we feel compelled to apply a *Sturrup*-like analysis in this case.[9]

In light of the seemingly unusual facts here, Schafer could perhaps be deemed for equal protection analysis a "class of one." Nevertheless, following *Sturrup*, we conclude that although Rules 18–1 and 18–1.5 are rationally related to a legitimate state interest, they "sweep too broadly in their proscription," as demonstrated by Schafer's plight, and that IHSAA acted improperly by penalizing Schafer under Rule 18 when he had already been denied relief under Rule 12.

The trial court found this case to present a student who decided, after consulting with his parents and school officials, to repeat his junior year in high school because a chronic but undiagnosed illness may have hampered his academic performance in college preparatory courses. All the evidence on the point showed the decision reflected a judgment that repeating was in the student's best interest academically. There was no evidence that repeating was intended to circumvent Rule 18 by allowing the student an easy ride in repeated courses so that he could turn his full attention to developing his basketball prowess. Yet, IHSAA deprived the student of eligibility for athletics on the basis of a rule that purportedly seeks to "upgrade student academic performance." That Schafer ended up repeating his junior year coursework flowed more from his illness than from any attempt to gain an advantage in sports competition. Therefore, to apply Rule 18 was arbitrary and capricious. The trial court did not err in the substance of the declaratory judgment.

## II. DECLARATORY JUDGMENT PROCEDURE

(b) Did the trial court err by holding a trial on a prayer for declaratory judgment prior to granting the plaintiffs' motion for leave to amend the amended complaint to include a prayer for declaratory judgment?

(c) Did the trial court err by granting the plaintiffs leave to amend the amended complaint to include a count for declaratory judgment?

(d) Did the trial court err by holding a trial without proper notice and after advising the parties that a trial on the merits was not going to be held?

(e) Did the trial court err by granting a declaratory judgment on the same day leave was granted to permit the amended complaint to be amended to include a claim for declaratory relief and prior to the IHSAA instituting any pretrial discovery or filing any pretrial motions?

■ We combine these four related questions into one discussion. IHSAA argues that the hearing on January 6 was a trial on the merits of Schafer's prayer for declaratory judgment, and that conducting such a trial before ruling on the motion for leave to amend the amended complaint deprived IHSAA of an opportunity to respond to such a prayer, to conduct discovery, to seek summary judgment, and to prepare for trial, and was therefore an abuse of discretion. Schafer argues that IHSAA's submissions indicate its awareness that the January 6 hearing was to be on the merits of declaratory judgment: first, IHSAA's December 17 motion to vacate hearing date states "[a]fter contacting the court person-

---

**9.** IHSAA asserts that Schafer's pleadings equivocate as to whether the basis for relief lies in the federal or state constitution. We agree, and add that the trial court's order is nonspecific on the point. IHSAA then argues its position in terms of art. 1, § 23 of the Indiana Constitution: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

In general it makes no difference whether the case was decided under Ind. Const. art. 1, § 23 or U.S. Const. amend. XIV, § 1, because "[i]t is well established that the rights intended to be protected under both constitutional provisions are identical." *Haas*, 259 Ind. at 526, 289 N.E.2d at 501. However, it is conceivable that our Supreme Court could decide that a *Sturrup*-like overbreadth analysis in equal protection cases is proper under our Indiana Constitution, even if such analysis is not available under the U.S. Constitution. *See, e.g., Brady v. State* (1991), Ind., 575 N.E.2d 981 (Indiana's confrontation clause); *see generally* Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv.L.Rev. 489 (1977).

nel for the Honorable Raymond Kickbush, the IHSAA understands that the hearing is on the Plaintiffs' prayer for declaratory relief ..." then argues that the hearing should be vacated due to lack of pending motions, or "[a]lternatively, if a hearing should be held relative to the prayer for declaratory judgment, the IHSAA prays that the hearing date be vacated and reset [to accommodate the schedules of Craft and Cato]"; second, another motion of December 17 objecting to Schafer's motion for leave to amend complaint argues on the merits that declaratory judgment was not appropriate.

▮▮▮▮ Ind.Trial Rule 15(A) allows a second amendment to a complaint "only by leave of court or by written consent of the adverse party, and leave shall be given when justice so requires." Amendments are to be liberally allowed, absent prejudice to the opponent. *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. Trial courts are given broad discretion in this area. *Id.* Amendment is permissible even during trial, "regardless of whether a change in the cause of action might result." *Palacios v. Kline* (1991), Ind.App., 566 N.E.2d 573, 576. Among the factors relevant to granting leave to amend are "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Id.* at 575. We will reverse the trial court only upon a showing of abuse of discretion, and we will affirm if there is any rational basis for the decision below. *Id.*

▮▮▮▮ Also committed to trial court discretion are decisions on motions for continuances. *Farm Bureau Mut. Ins. Co. v.*

*Dercach* (1983), Ind.App., 450 N.E.2d 537, 539, *trans. denied.* We review for abuse of discretion, and will not reverse absent a showing by the movant of prejudice from denial of the motion. *Id.*

IHSAA has not alleged any bad faith or dilatory motive underlying Schafer's amendment. Nor has IHSAA shown how it was prejudiced by permitting the amendment, or by denying IHSAA more time. IHSAA's briefs fail entirely to show what IHSAA might have done but was not able to, that is, what arguments it might have made in a responsive pleading or motion for summary judgment, what evidence it might have obtained through discovery, or what witnesses might have been called to testify at the hearing, or in what way it was unprepared for the hearing. Because IHSAA has not shown any prejudice to its presentation of its case by the trial court's actions, we conclude that IHSAA has not demonstrated an abuse of discretion. *See Huff, supra; see also Brenneman Mechanical & Elec., Inc. v. First Nat'l Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, 240–41, *trans. denied.* We note that *Bowen Eng'g Corp. v. W.P.M. Inc.* (1990), Ind.App., 557 N.E.2d 1358, cited by IHSAA at page 45 of its appellee's brief as holding "reversible error to consolidate motion for preliminary injunction with trial on merits without notice to parties" actually held that the appellant had "failed to demonstrate reversible error because no showing [was] made of any prejudice which arose from the consolidation." *Id.* at 1363.

As to the timing aspect raised in issue (b), the record indicates, contrary to IHSAA's formulation of the issue, that the trial court granted leave to amend the amended complaint before conducting the hearing of January 6.[10] As to issue (d), we

---

10. The transcript from January 6 includes the following:

[IHSAA]: But we haven't even ... there's not a motion ... there is not a prayer for declaratory judgment that has been granted leave ... they've not been granted leave to file that as of this time.
[Trial court]: Is that the subject of your second amended complaint?

[Schafer]: That's my whole ... (indecipherable).…
[Trial court]: Then that's what we're going to hear. We're going to hear it.
[Schafer]: Do you want to grant me leave formally, then, before we have the hearing?
[Trial court]: I'm granting you leave to proceed on your motion for declaratory judgment. If that is in the second amended complaint, then

disagree with IHSAA's statement that the trial court advised the parties that the hearing would not be "on the merits." The trial court at the January 6 hearing indicated its intent to take evidence. *See* note 10, *supra.* IHSAA's reference to the record for support has been used out of context.

## III. BIFURCATION

(f) Did the trial court err by denying IHSAA's motion to strike jury demand?

(g) Did the trial court err by bifurcating the cause, making some issues triable to the court and other issues triable to the jury?

(h) Did the trial court err by granting the plaintiffs' request for jury trial on Counts II and III of the second amended complaint after the plaintiffs proceeded to trial to the court on Count I?

 IHSAA argues that the trial court's decision to bifurcate the legal and equitable issues contravenes the principles set out in *Hiatt v. Yergin* (1972), 152 Ind. App. 497, 284 N.E.2d 834, *trans. denied, disapproved on other grounds* 411 N.E.2d 653, *trans. denied.* We agree. *Hiatt* teaches that where a claim for relief includes both equitable and legal causes of action, the trial court must examine the totality of the proceedings, including discovery and deposition materials, and if the essential nature of the claim is for equitable relief, the entire action is drawn into equity and there is no right to jury trial. *See also Winney v. Board of Comm'rs of County of Vigo* (1977), 174 Ind.App. 624, 369 N.E.2d 661.

The trial court entered no reasoning to support bifurcation, other than stating that some of the issues were in equity, and some in law. We see no theory on which to sustain the decision. The essence of Schafer's case was to obtain eligibility for school sports, through an injunction prohibiting IHSAA from ruling him ineligible. Injunction is an equitable remedy. Therefore, the entire case was drawn into equity, and it

fine, so be it. I haven't even seen that yet. I want to get the evidence in....

was error for the trial court to reserve any issues for jury trial.

## IV. INJUNCTION

(a) Is the interlocutory injunction contrary to the evidence?

(b) Is the interlocutory injunction contrary to law?

(c) Did the trial court err by failing to designate the purpose of the January 6, 1992 hearing prior to taking evidence, and, thereafter, granting an interlocutory injunction against IHSAA?

(d) Did the trial court err by granting an interlocutory injunction without setting a bond?

 IHSAA characterizes the trial court's order as a preliminary injunction, then argues the trial court erred in granting such relief, pursuant to the criteria for evaluating preliminary injunctions set out in *Rees v. Panhandle E. Pipe Line Co.* (1978), 176 Ind.App. 597, 377 N.E.2d 640. We disagree with that characterization. Although this appeal is interlocutory in that fewer than all the claims were resolved, *see* T.R. 54(B) and App.R. 4(B)(6), we see nothing preliminary about either the declaratory judgment or the prohibitory injunction. Therefore, the criteria for preliminary injunction do not apply.

Our standard of review is deferential:

[T]he grant or denial of an injunction is a discretionary matter for the trial judge, whose action will be reversed only upon a showing of abuse. As a court of appeal we engage in any reasonable presumption in favor of the trial court; we do not presume error, but affirm the trial court's decision if it is sustainable on any valid legal theory. Our judgment is not substituted for the trial court's even though the circumstances might have justified a different result. Rather, only when the trial court's action was clearly against the logic and effect of the circumstances will an abuse of discretion be found on appeal.

Record at 821–22.

*State ex rel. Stream Pollution Control Bd. v. Town of Wolcott* (1982), Ind.App., 433 N.E.2d 62, 65 (citations omitted). Similarly, because T.R. 52(A) expressly applies to cases in equity, the trial court's findings and judgment will be reversed only if clearly erroneous, that is, only if we are left with a definite and firm conviction that a mistake has been made. *Burnett v. Heckelman* (1983), Ind.App., 456 N.E.2d 1094, 1097. We look only to the evidence and inferences therefrom supporting the judgment, neither reweighing the evidence nor judging the credibility of witnesses, and will reverse only where the evidence leads to a conclusion directly opposite to that reached below. *Simon v. City of Auburn, Ind., Bd. of Zoning Appeals* (1988), Ind. App., 519 N.E.2d 205, 209.

IHSAA assails 12 through 16 of the trial court's "findings of fact." We agree that 12–16 are more accurately characterized as conclusions of law rather than as findings of fact. Therefore, the following discussion consolidates issues (a) and (b) immediately preceding. We conclude that only 12 is clearly erroneous, and that the injunction should be sustained.

As to finding 12, no evidence supports a finding that the purpose of Rule 18 is "to prevent students from obtaining longer eligibility for athletic participation." Clearly, Rule 18 serves to mandate academic success and progress as a prerequisite to athletic participation. It is Rule 12 that prevents longer eligibility.

Finding 13 is that Schafer's illness "denied [him] an opportunity to qualify to participate in athletic competition." IHSAA argues that Schafer became ineligible not because of his illness, but rather by choosing to repeat his junior year coursework. However, it was Schafer's sinusitis that underpinned the entire situation. This finding means that the trial court considered the academic decision not a super-

vening cause ending the causal nexus between the illness and the ineligibility. That analysis is not clearly erroneous.

Finding 14, that the IHSAA rules do not bear a "fair and substantial relationship between the prohibiting of the plaintiff from participating in athletics due to his withdrawal because of his health problems, necessitating his repeating fall courses which were one year courses (and not available the following semester) ... and the IHSAA's desired objective of promoting ... competition ... which is subservient to academic[s] ..." is much more a conclusion of law than a finding of fact. IHSAA argues that Schafer could have taken summer school, or worked on his own to prepare for the spring portion of the year-long courses. There was some evidence to support that position. On the other hand, there was evidence that the path chosen was the best option for Schafer's academic and social progress. We cannot say we are left with a definite and firm conviction that the trial judge was wrong on this point.[11]

Finding 15 articulates the "absurdity" of applying Rule 18 in Schafer's case in that he was left worse off than if he had failed his classes during fall 1990. Commissioner Cato acknowledged this analysis of the rules. IHSAA asserts that there is nothing absurd here, because if Schafer had earned failing grades for the fall 1990 semester, he would have been ineligible during the first grading period of spring 1991, then speculates that failure for the entire semester in fall 1990 would probably have meant failure during the first grading period of the semester, leaving Schafer ineligible for the fall semester part of the basketball season, in sum, ineligible for the entire 1990–91 basketball season, but eligible for 1991–92, thus not worse off than being eligible in 1990–91 but not in 1991–92. IHSAA's argument is too speculative to con-

---

11. The "fair and substantial relationship" language in this finding strongly suggests intermediate scrutiny. *See* note 7, *supra*. In contrast, in conclusion of law 2 the lower court referred to "a fair relationship to the intended purpose of the rules," which somewhat suggests the rational basis test, but not very strongly, given the absence of the key word. However, the possibility that the trial court used the wrong standard of review does not affect the outcome on appeal. We determined in Part I that Rule 18 passes the rational basis test, but is overbroad under *Sturrup.*

demn the trial court's finding as clearly erroneous.

Finding 16 states that Schafer would have been eligible in the spring semester 1992 if he had not attended school during the preceding fall, but that attending school was in Schafer's best interest, and therefore IHSAA's Rule 18 decision penalized Schafer for choosing to attend. IHSAA concedes the analysis, but argues that Schafer could have attended summer school, or refreshed his understanding of the fall coursework by auditing those classes on his own time, or that he should have done better the first time around. The argument in essence seeks reweighing of the evidence on what was best for Schafer, academically, in the unique facts and circumstances of his situation. We decline to do so. Finding 16 is not clearly erroneous.

■ In sum, the trial court's injunction prohibiting IHSAA from ruling Schafer ineligible for interschool sports in the spring semester 1992 was not an abuse of discretion. However, the injunction does suffer one flaw: it is overbroad as to Schafer's eligibility for participation in interschool athletics after spring 1992. An injunction is an extraordinary remedy that should be cautiously granted and narrowly confined in scope. *Day v. Ryan* (1990), Ind.App., 560 N.E.2d 77, 83. This injunction is overbroad because it lacks an endpoint for Schafer's eligibility. Clearly, at some point he will lose his eligibility, whether by graduation or by IHSAA rules. Accordingly, we remand for the trial court to craft a more narrowly tailored injunction.

Issues (c) and (d) immediately preceding are not argued in IHSAA's brief and reply brief, and are thus waived. In any event, as to (c), our discussion in Part I on the declaratory judgment applies with equal force to the injunction.

## V. CONCLUSION

IHSAA engages in state action in making and enforcing its rules, and thus is subject to judicial review. A trial court may, under Indiana caselaw, determine that an IHSAA rule is rationally related to a legitimate state interest but indefensibly overbroad. The trial court here correctly determined that IHSAA arbitrarily and capriciously overextended Rule 18 in applying it to Schafer's case. Thus, the declaratory judgment was proper, and the trial court was correct in enjoining IHSAA from ruling Schafer ineligible for the spring semester of 1992. The injunction, however, must be narrowed by including an endpoint for Schafer's eligibility. IHSAA has not demonstrated reversible error in regard to the procedural stance of the January 6 hearing, except for error in bifurcating the legal and equitable issues.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

BUCHANAN and RUCKER, JJ., concur.