**GRIFFIN HIGH SCHOOL,**
**Plaintiff-Appellant,**

v.

**ILLINOIS HIGH SCHOOL ASSOCIATION, Defendant-Appellee.**

No. 86–2948.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1987.

Decided June 10, 1987.

Rehearing Denied July 10, 1987.

Thomas F. Londrigan, Londrigan, Potter & Randle, P.C., Springfield, Ill., for plaintiff-appellant.

Wayne F. Plaza, Rooks, Pitts, & Poust, Chicago, Ill., for defendant-appellee.

Before POSNER and FLAUM, Circuit Judges, and WILL, Senior District Judge.[*]

FLAUM, Circuit Judge.

Griffin High School, a private religious school, sued the Illinois High School Association ("IHSA") under 42 U.S.C. § 1983, alleging that certain IHSA by-laws discrim-

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

inated against private schools in violation of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. The district court granted summary judgment to the IHSA, and we affirm.

### I.

The IHSA is a voluntary, not-for-profit association of public and private secondary schools in Illinois. Public schools comprise approximately 85% of the membership of the IHSA, and private schools make up the remaining 15%. Griffin High School, a private school established by the Catholic Diocese of Springfield, is a member of the IHSA.

The purpose of the IHSA is to supervise and regulate the interscholastic activities of its member schools. In furtherance of this end, the IHSA promulgates by-laws and regulations governing the conduct of member schools. At issue in this appeal is IHSA by-law 3.043, which is one of the "transfer rules" that govern the eligibility to participate in intermural sports of students who change schools.

Under the transfer policy in place before this dispute arose, students who transferred to or from IHSA schools were subsequently ineligible for participation in IHSA interscholastic athletic competition for one year, unless their parents had actually changed residence from one school district to another. The purpose of this policy was to prevent recruitment of student athletes. However, in the late 1970s and early 1980s, considerable discontent arose within the IHSA membership concerning the impact of private schools' enrollment policies on intermural sports. This discontent led to the 1981 appointment of an ad hoc committee to study the issue.

The ad hoc committee identified several differences between public and private schools which, in its view, rendered competition between the two groups of schools inequitable despite the facial neutrality of the IHSA transfer policy. For example, a private school may select students from an unlimited geographical area, whereas a public school may only enroll students from the school district in which the students' parents reside. In addition, private schools have available a wide range of financial incentives, such as scholarships and tuition waivers, that public schools do not. Finally, private schools, unlike public schools, are able to select and control their enrollments. In the ad hoc committee's opinion, these differences had caused private schools to enjoy an unfair advantage in IHSA-sponsored tournaments and playoffs under the transfer policy then in effect.

In 1982, pursuant to the recommendations of the ad hoc committee, the IHSA legislative committee submitted a change in the transfer rules to the IHSA membership. This change was subsequently adopted by a majority vote. Under the new transfer rules (specifically, under by-law 3.043), a student who transfers from a private to a public school does not face the one-year bar on interscholastic athletic participation, if the student is enrolling at the public school for the first time and if the principals of both schools agree that no undue influence is involved in the transfer.[1]

---

1. The present transfer rules are as follows:

   3.041 If students transfer from attendance in one high school district to attendance in another high school district, they shall be ineligible [to participate in interscholastic athletic competition] for a period not to exceed one year unless their parents also become residents of the district to which they transfer.

   3.042 If their parents become residents of the district to which they transfer, they shall become eligible immediately if the transfer occurs within the first ten (10) days of the semester for the school to which they are transferred or after one calendar month if they transfer during the semester.

   3.043 Students who transfer to or from a member school shall be ineligible for a period not to exceed one year unless their parents move from one public school district to another in conjunction with the transfer of schools. However, if the transfer is from a private school to a public school in the district where the student's parents reside; if the student is enrolling at the public school for the first time; and if the principals of both the private and public schools involved concur that undue influence is not involved with the transfer, the student shall be eligible in accordance with the provisions of section 3.042 of these By-laws.

   By-laws, Illinois High School Association (1982).

All other transfer students continue to face the one-year bar.

Distressed at this new policy, on September 27, 1983 Griffin High School filed a complaint against the IHSA under 42 U.S.C. § 1983, requesting a declaratory judgment that, *inter alia,* by-law 3.043 was unconstitutional. After discovery and cross-motions for summary judgment, the district court entered summary judgment for IHSA.

## II.

Griffin argues that the new transfer rules violate both the Equal Protection and the Due Process Clauses of the Fourteenth Amendment. We reject these contentions.

■ As a preliminary matter, we note that the presence of state action is not in dispute in this case. Public schools make up 85% of the IHSA's membership, and although the IHSA is a purely voluntary association, the overwhelmingly public character of the IHSA membership is sufficient to confer state action for the purposes of § 1983. *See In re United States ex rel. Missouri State High School Activities Ass'n,* 682 F.2d 147, 151 (8th Cir.1982); *Walsh v. Louisiana High School Athletic Ass'n,* 616 F.2d 152, 156 (5th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *see also Menora v. Illinois High School Ass'n,* 683 F.2d 1030, 1032 (7th Cir.1982), *cert. denied,* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983) (assuming, without deciding the question, that the IHSA is an arm of the state for Fourteenth Amendment purposes).

The first question presented by Griffin's equal protection claim is the applicable standard of review. The usual standard of review for a statute or regulation challenged on equal protection grounds is the rational basis test. Under this test, legislation is presumed to be valid, and will be sustained as long as the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d

186 (1981); *Vaden v. Village of Maywood,* 809 F.2d 361, 365 (7th Cir.1987).

However, the Constitution requires heightened judicial scrutiny in two situations: when a law classifies so as to burden a "suspect class," and when it classifies in such a way as to infringe upon a constitutionally protected fundamental right. *Attorney General v. Soto-Lopez,* 476 U.S. 898 n. 6, 106 S.Ct. 2317, 2323 n. 6, 90 L.Ed.2d 899 (1986); *see Cleburne,* 105 S.Ct. at 3255. In this case, Griffin High School contends that we should apply the most searching review—"strict scrutiny"—to by-law 3.043, because the new transfer policy intolerably burdens two fundamental rights: the free exercise of religion and the right of parents to direct the education of their children. We reject both arguments, and conclude that the correct standard of review in this case is the "rational basis" test.

According to Griffin, by-law 3.043 burdens parents' and students' First Amendment right to the free exercise of their religion. The transfer rules on their face do not classify in terms of religion. However, "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Wisconsin v. Yoder,* 406 U.S. 205, 220, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15 (1972).

■ Griffin has presented no evidence that the rights of parents and students to practice their religion have been unduly burdened in this case. Griffin does not argue that by-law 3.043 constitutes "grave interference with important ... religious tenets," *id.* at 218, 92 S.Ct. at 1534, or that it affirmatively compels students or parents to "perform acts undeniably at odds with fundamental tenets of their religious beliefs," *id.* Because there is no evidence in the record that the new transfer rule unduly trammels upon the religious beliefs of Griffin students or parents, we decline to apply strict scrutiny to by-law 3.043 on this ground.

Griffin also argues that the new transfer rule burdens the fundamental right of parents to direct the education of their children. Griffin relies on *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). In *Pierce*, the Supreme Court held that an Oregon statute that compelled public school attendance for children from age eight to age 16 violated the Due Process Clause. The Court found that "[t]he inevitable practical result of enforcing the Act under consideration would be destruction of appellees' primary schools, and perhaps all other private primary schools for normal children within the State of Oregon." *Id.* at 534, 45 S.Ct. at 573. The Court thus concluded that the statute "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control." *Id.* at 534–35, 45 S.Ct. at 573–74.

In this case, Griffin argues that by-law 3.043 has the inevitable effect of weakening private school athletic teams. As private school athletic teams become weaker, parents will choose to send their children to public schools instead. The end result will be the destruction of private schools in Illinois, and thus a grave infringement on parents' ability to educate their children as they wish. This chain of causation is too attenuated and speculative to support the conclusion that the new transfer policy unreasonably interferes with the freedom of parents to direct their children's upbringing. We must conclude that the transfer rules do not warrant strict scrutiny under *Pierce*.[2]

Thus, the correct standard for reviewing by-law 3.043 is the rational basis test. Under this test, the transfer rule will not be overturned unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979). This is not the case here. The stated purpose of the new transfer policy is to adjust for perceived inequities in the previous system. The IHSA points out that private schools may freely limit and select their enrollment, and may offer financial incentives to promising student athletes. In contrast, a public school must accept any and all students who live within that school district, and it has no financial incentives to offer. The new transfer policy is intended to place public schools on an equal footing with private schools with regard to student recruitment, without abandoning the goal of preventing undue influence on transfer students. This purpose is a legitimate one for the IHSA, and by-law 3.043 has a rational relation to this purpose.

Griffin contends that "the evidence in the record of this case establishes that private schools were intentionally singled out for discriminatory treatment as a class." Griffin mistakenly offers this contention as a justification for strict scrutiny. Allegations of intentional discrimination do not trigger strict scrutiny unless the victims of the discrimination belong to a suspect class. Griffin concedes that private schools have not historically been considered a suspect class. *See San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973) (A suspect class is a group of persons that the courts have recognized as having been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.").

Even under the rational basis test, however, a regulation may violate the

---

**2.** The new transfer policy also does not interfere with the right to education. The Court "has not yet definitively settled the questions whether a minimally adequate education is a fundamental right and whether a statute alleged to discriminatorily infringe that right should be accorded heightened equal protection review." *Papasan v. Allain*, ——— U.S. ———, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986). However, we feel reasonably confident in concluding that a strong interscholastic sports program is probably not one of the necessary elements of a minimally adequate education.

Equal Protection Clause if it can be shown that the sole purpose of the regulation was the desire to injure a particular class of persons. *E.g., United States Dep't of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973) (A statute excluding household groups that included unrelated persons from the federal food stamp program violated the Equal Protection Clause, because it was motivated solely by a "bare congressional desire to harm a politically unpopular group."); *see Jackson v. City of Joliet,* 715 F.2d 1200, 1203 (7th Cir.1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (Discriminating against a class of persons in a "vicious or irrational fashion" gives rise to an equal protection claim.); *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982) ("Purposeful or invidious discrimination" against a class violates the Equal Protection Clause.). Griffin has offered no evidence, beyond its own allegations, to show that the transfer rules were enacted for the sole purpose of injuring private schools. We therefore must conclude that by-law 3.043 does not violate the Equal Protection Clause.

■ Our conclusion that the new transfer rule is rationally related to a legitimate state purpose means that Griffin's substantive due process claim must also fail, because to survive substantive due process analysis, a regulation need only "bear a rational relation to a legitimate government interest." *Vaden,* 809 F.2d at 364; *see Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955). However, Griffin argues in addition that its financial interest in maintaining enrollment levels is a protected property interest, and that it was deprived of this property interest without procedural due process. Although the record shows that Griffin has experienced a decline in enrollment, this decline began before the transfer rules were amended, so we cannot infer that by-law 3.043 was the cause. In fact, Griffin concedes that "almost all high schools, public and private, have lost enrollment over the past several years." Even assuming, however, that Griffin could show economic injury as a result of by-law 3.043, and even assuming that this financial interest is a protected property right, it is difficult to ascertain what additional process Griffin should have received but was denied. As an IHSA member, Griffin was free to submit amendments or proposals to the association. It has not done so, and according to the IHSA, Griffin has never attended meetings of the legislative body of the IHSA. Griffin received the process that was due: notice of the proposed regulation and the right to participate in the IHSA decisionmaking process through fair and democratic procedures. *See Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); *Vaden,* 809 F.2d at 364; *Philly's v. Byrne,* 732 F.2d 87, 95 (7th Cir.1984) (Wood, Jr., J., concurring).

Although there are some things that a majority may not constitutionally do to a minority, the IHSA's adoption of by-law 3.043 is not one of them. The judgment of the district court is AFFIRMED.