Shane R. THOMAS, Appellant–Plaintiff,

v.

GREENCASTLE COMMUNITY SCHOOL CORPORATION and Indiana High School Athletic Association (IHSAA), Appellees–Defendants.

No. 67A05–9208–CV–286.

Court of Appeals of Indiana, Fifth District.

Nov. 24, 1992.

Delbert H. Brewer, Greencastle, for appellant-plaintiff.

Robert E. Cambridge, Bloomington, Robert M. Baker, III, Miller Woddell & Baker, P.C., Indianapolis, for appellees-defendants.

SHARPNACK, Chief Judge.

Shane R. Thomas appeals from the grant of summary judgment on behalf of the Indiana High School Athletic Association ("IHSAA") and Greencastle Community School Corporation ("Greencastle") on his complaint for injunctive and declaratory relief in which he sought to bar enforcement against him of the IHSAA's Rule 4 regarding age limitations for participation in IHSAA sanctioned events.[1] We affirm.[2]

We find one restated issue to be dispositive of Thomas's appeal, that being:

Does Rule 4 violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States? [3]

The facts in this case are not in dispute. The IHSAA is a not-for-profit corporation, organized under Indiana law. Its membership consists of over 400 public and private Indiana high schools, including Greencastle. In exchange for their membership, Greencastle and other high schools have agreed to conform to the rules, regulations and policies of the IHSAA. IHSAA Rule 4 reads as follows:

"A student who is or shall be nineteen (19) years of age prior to the Age Eligibility Cutoff Date shall be ineligible for interschool athletic competition during all of the sports contest seasons of the ensuing school year; a student who is nineteen (19) years of age on or after the Age Eligibility Cutoff Date is eligible as to age during all of the sports contest seasons of the ensuing school year. The Age Eligibility Cutoff Date is August 15; in 2003 it is August 1; in 2004 it is July 1; and in 2005, and thereafter, it is June 1."

(Supplemental record, p. 16.)

Shane Thomas was a star running back for the Greencastle football team in his junior year. He turned 19 on July 7, 1992, the summer before his senior year. Thom-

---

1. Our discussion applies equally to both defendants unless otherwise indicated.

2. IHSAA requested leave of this court to file a reply brief. We grant ISHAA's petition pursuant to Ind. Appellate Rule 8.3(C).

3. Our analysis under the fourteenth amendment applies equally to Thomas' claim under article 1 section 23 of the Indiana Constitution. *Haas. v. South Bend Community School Corp.* (1972), 259 Ind. 515, 526, 289 N.E.2d 495, 501.

as' advanced age was the consequence of his having repeated second grade due to a learning disability. In anticipation of his disqualification under Rule 4, Thomas followed the only administrative option available to him and proposed a rule change. The IHSAA considered and rejected his proposal. Thomas responded by initiating the present suit.

Both defendants moved for summary judgment. The trial court granted the motion and entered judgment against Thomas. The court based its judgment upon the dual conclusions that the IHSAA did not engage in state action and that the IHSAA rules were reasonably related to the objectives of promoting health and safety of the participants and of preserving competition.

Neither side in this case claims the existence of a genuine issue of material fact; rather, they each claim that they are entitled to judgment as a matter of law. Because the parties have argued and the trial court has based its judgment upon two independently sufficient grounds, we will only address the latter dispositive issue of whether Rule 4 comports with equal protection.

■■■■ The determination of whether a legislative or other classification violates the equal protection clause is often dictated by the standard of scrutiny applied to it. That standard, in turn, is determined by the nature of the classification itself. *IHSAA v. Raike* (1975), 164 Ind.App. 169, 178, 329 N.E.2d 66, 72. If the classifying criteria are grounded upon the "suspect traits" of race, national origin or alienage, or if they impinge upon a "fundamental right" such as the right to vote, the right to interstate travel, or the right to appeal a criminal conviction, we must subject the classification to strict scrutiny. *Id.* Under a strict scrutiny analysis, the classification must be necessary to further a compelling governmental interest. *Id.* By contrast, where the classification neither is based upon suspect criteria nor involves a fundamental right, courts generally apply a low level of scrutiny to the classification. Under such an analysis, the classification must bear some rational relationship to a

legitimate government purpose. *Id.* Finally, an intermediate approach has been developed in cases where, although classifications are not drawn upon suspect criteria and do not involve fundamental rights, either the criteria used (such as gender) or the rights involved merit higher scrutiny than the traditional rational basis test. *See Craig v. Boren* (1976), 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, *reh'g denied* 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574; *Haas v. South Bend Community School Corp.* (1972), 259 Ind. 515, 289 N.E.2d 495.

In *Raike*, the court applied middle level scrutiny to an IHSAA rule prohibiting married athletes from competing in high school athletics reasoning that, although neither marriage nor participation in high school athletics was in itself a fundamental right, a rule which simultaneously infringed upon both rights merited higher scrutiny. 329 N.E.2d at 76–77. In that vein, the *Raike* court cited Supreme Court cases that emphasized the vital importance of the right to marry, though those cases did not clearly define it as a fundamental right which triggers strict scrutiny. 329 N.E.2d at 74–75.

■■■■ We believe that the rational basis test represents the proper level of scrutiny to be applied to Rule 4. Strict scrutiny is clearly inapplicable because Rule 4 does not base its classification upon a suspect trait or infringe upon a fundamental right. *Raike* 329 N.E.2d at 74. Middle level scrutiny is likewise inapplicable. Rule 4 only affects the right to participate in high school athletics. Unlike the rules in *Raike* and *Haas* it is neither coupled with some other vital right such as the right to marry nor gender based.

Thomas, however, relies upon *Sturrup v. Mahan* (1974), 261 Ind. 463, 305 N.E.2d 877 and the recent case of *IHSAA v. Schafer* (1992) Ind.App., 598 N.E.2d 540 for the proposition that something more than the traditional rational basis test is called for when reviewing IHSAA rules. In *Sturrup*, the court addressed an IHSAA rule which, with narrow exceptions, required students who had transferred to member

schools to be enrolled in their new school for at least one year unless the parents actually changed their residence to the new school district. *Sturrup*, 261 Ind. at 464, 305 N.E.2d at 878–879. Without actually setting forth the level of scrutiny it was applying the court stated:

"The objective of the IHSAA bylaws regarding the transferee eligibility is to preserve the integrity of interscholastic athletics by minimizing recruitment, proselyting, and school "jumping" for athletic reasons. We believe that such practices at the high school level are despicable and odious and should, if possible, be eliminated by any reasonable method available. These transferee eligibility bylaws are *reasonably* related to the above-stated objective. That is to say, they are designed to and do, in fact, contribute to the realization of that goal. However, said bylaws are *unreasonable* in that they sweep too broadly in their proscription and, hence, violate the Equal Protection Clause of the fourteenth amendment. [The rules] limit eligibility to those who move with their parents free of undue influence and to those whose move is necessitated by 'unavoidable circumstances' free of undue influence. All other transferring student-athletes, who cannot bring themselves within one of the above two categories, are *automatically* denied the opportunity to participate in interscholastic athletics for a period of one year. The bylaws, in essence, create an irrebuttable conclusion of law that all other transferees have been the victims of unscrupulous practices. This is precisely where the rules sweep too broadly, they create an over-inclusive class—those who move from one school to another for reasons wholly unrelated to athletics are grouped together with those who have been recruited or who have 'jumped' for athletic reasons. In short, the purported objective of the transferee eligibility rules is to prevent the use of undue influence and school 'jumping,' but their practical effect is to severely limit the transferee

eligibility in general. The rules as presently constituted penalize a student-athlete who wishes to transfer for academic or religious reasons or for any number of other legitimate reasons. Surely, denying eligibility to such transferees in no way furthers IHSAA objectives."

261 Ind. at 468–469, 305 N.E.2d at 881 (original emphasis).

In *Schafer*, this court relied upon *Sturrup* to hold IHSAA Rule 18, regarding academic eligibility for students who repeat classwork, violative of equal protection. *Schafer*, 598 N.E.2d at 554. We read the above quoted passage from *Sturrup* to require the application of a modified rational basis test whereby we first examine whether the rule is rationally related to a legitimate goal, and, if so, whether it sweeps too broadly. 598 N.E.2d at 552. We were constrained in *Schafer* to apply the modified rational basis test despite the fact that *Sturrup*'s analysis was out of the mainstream of equal protection case law and had been criticized by other states. 598 N.E.2d at 553. However, because the *Sturrup* court gave no reason for its departure from traditional equal protection analysis and did not provide any guidance as to its future implications, we read *Sturrup* and *Schafer* narrowly. Where we are presented with a rule similar to the ones involved in those cases, we will examine them for rationality and broad over-inclusiveness, but no more.

■ Turning to the case at hand, the IHSAA has expressed three undisputed motivating goals behind Rule 4: 1) to protect the health and safety of younger student athletes, 2) to foster competition, and 3) to eliminate the possibility of "redshirting."[4] While Rule 4 arguably sweeps too broadly in promoting its anti-redshirting objective, Thomas does not contend that the rule sweeps too broadly with respect to the remaining stated objectives. Rather than argue that his exclusion would not promote safety and competition, Thomas mainly complains that athletes even older

---

**4.** Appellees use this term to denote the practice of keeping student athletes out of varsity competition for a year in order to extend their eligibility. (Brief of Appellee, IHSAA, p. 32.)

than himself are allowed to compete in baseball and other spring and winter sports. We are therefore left with the question of whether the classifications are so under-inclusive as to bear no rational relationship to any of the rule's stated purposes.

We hold that Rule 4 bears a rational relationship to a legitimate interest of the IHSAA. As the formulation of the traditional rational basis test suggests, a classification may be substantially under-inclusive and still rationally relate to its stated objective. Cases from other jurisdictions upholding similar age rules under a rational basis test support our decision. *Arkansas Activities Association v. Meyer* (1991), 304 Ark. 718, 805 S.W.2d 58, *Missouri State High School Activities Association v. Schoenlaub* (1974), Mo., 507 S.W.2d 354.

Furthermore, we do not view the rule to be as broadly under-inclusive as Thomas would have us believe. Thomas focuses upon the fact that, under Rule 4, students who participate in baseball may play that sport until the age of 19 years and 10½ months whereas he was prohibited from participating in any sport at a time when he was only 19 years and 1½ months old. However, the IHSAA points out that, by having the fixed cutoff date, it has established the maximum age differential between the youngest possible athlete and the oldest. That is because the earliest date upon which a student may enter kindergarten is also a fixed date pursuant to Ind.Code § 20–8.1–3–17 [5]. The differential remains the same for all sports throughout the course of the school year so that, whereas baseball players may compete when they are older than Thomas would be during the football season, the oldest base-ball players are still comparatively closer in age to their youngest counterparts than Thomas would be relative to his youngest football competitors. Thomas responds that, because the age differential of five years already exists, excluding someone who is only 46 days older is patently arbitrary. However, the same could be said of any age classification. There will always be people who fall minutes, even seconds, outside of the established line.[6]

Because we hold that Rule 4 does not violate the equal protection clause, we affirm the judgment of the trial court.

AFFIRMED.

BARTEAU and GARRARD, JJ., concur.

---

**5.** However, I.C. § 20–8.1–3–17(e) does require school corporations to adopt procedures whereby parents may petition to allow their children to enter kindergarten at an earlier age.

**6.** While Thomas does not argue that the rule sweeps too broadly by excluding all students above a certain age in order to promote the goals of safety and competition, we recognize that such an argument may be available. However, we see no way to avoid the tailoring problems inherent in setting some sort of limits on the age or maturity of participants short of requiring the IHSAA to promulgate some sort of formula to establish the physical and mental maturity characteristics of the least mature student athlete as compared to those of what is determined to be the most mature athlete allowable, and then to apply that formula to each athlete regardless of his or her age. Nothing in *Sturrup* requires us to apply such strict scrutiny to the rule at hand. In fact, a similar rule has withstood even intermediate scrutiny. *Cavallaro v. Ambach* (1983), 575 F.Supp. 171, 175.