**Herman JORDAN, By and Through his next friend and parent, Doretha JONES, Plaintiff,**

v.

**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC.; C. Eugene Cato, in his capacity as Commissioner of the Indiana High School Athletic Association, Inc.; R. Nelson Snider High School; and Dennis V. McClurg, in his capacity as Principal of R. Nelson Snider High School, Defendants.**

No. F 92–295.

United States District Court, N.D. Indiana, Fort Wayne Division.

Jan. 27, 1993.

R. John Wray, Wray and Associates, Fort Wayne, IN, for plaintiff.

Gilmore S. Haynie, Hawk, Haynie, Gallmeyer, and Chickedantz, Fort Wayne, IN, Robert M. Baker, III, Miller, Woddell and Baker, P.C., Indianapolis, IN, for defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the complaint for declaratory and injunctive relief filed by plaintiff Herman Jordan, by and through his next friend and parent, Doretha Jones. Jordan filed his cause of action in the Allen Superior Court on December 10, 1992. On December 15, 1992, defendant the Indiana High School Athletic Association ("IHSAA") filed its petition for removal[1] to this court, and on December 21, 1992, the court held a preliminary conference. At that preliminary conference, the court permitted the parties the opportunity to conduct a further administrative review of the IHSAA decision regarding Jordan, which review was held on January 8, 1993. Jordan filed his "Brief on Jurisdiction" on January 6, 1993, and filed his trial brief on January 19, 1993. The IHSAA filed a trial brief, motion to dismiss for lack of jurisdiction, and supportive brief on January 19, 1993.

The court held a hearing on the matter on January 20, 1993, at which time the parties agreed to consolidate the trial on the merits with the motion for preliminary injunction. After hearing testimony and argument at that January 20, 1993 hearing, the court took the matter under advisement. After having examined the entire record and after having determined the credibility of the witnesses, this court enters its Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. The court now issues its Memorandum of Decision and Order. For the following reasons, the permanent injunction is GRANTED; and IHSAA's motion to dismiss is DENIED.

## FINDINGS OF FACT

Through this action, Herman Jordan, a student at R. Nelson Snider High School in Fort Wayne, Indiana, is seeking to enjoin the IHSAA from the continued implementation of an IHSAA decision which renders him ineligible to participate in interscholastic athletic competition on the Snider basketball team. Jordan's complaint alleges that the IHSAA decision regarding his eligibility is arbitrary and capricious, and "operates as a denial of equal protection to Herman Jordan in violation of his rights under the Fourteenth Amendment to the

---

1. As to why this matter was removed to this forum, the court has observed footnote 2 in the recent *Crane v. IHSAA*, 975 F.2d 1315, 1317 (7th Cir.1992) case, wherein the Seventh Circuit implies that the reason the IHSAA removed that case to the federal court may have been that the IHSAA has not always fared very well when litigating these actions in the Indiana state courts.

Federal Constitution, and in violation of Article 1, Section 23 of the Indiana Constitution."

Jordan attended Marshall Metro H.S. on Chicago's south side for ninth grade in the 1988–1989 school year. He likewise attended the same school for the 1989–1990 school year. In the fall of 1990, Jordan registered at Marshall Metro for his third year of high school, but was absent from school on 64 days that semester. In the spring semester of 1991, Jordan only attended school 15 days. As a result of his truancy, Jordan was withdrawn from enrollment at Marshall Metro in April, 1991. He received no credits for the 1990–1991 school year. At Marshall Metro, Jordan's academic performance was very poor[2] and he was on his way to whatever bleak prospects confront high school drop-outs in our high-tech world. Jordan did not participate in interscholastic athletics at Marshall Metro, and in fact, under Illinois rules, due to his poor academic performance, Jordan would not have been eligible to participate in athletics at Marshall Metro.

At the invitation of a cousin who teaches at a Fort Wayne elementary school, Jordan moved to Fort Wayne, where he attended Snider as an eleventh grade student for the 1991–1992 school year.[3] Jordan's attendance and grades improved substantially after his move to Fort Wayne. According to Snider Principal, Dennis McClurg, Jordan "is an excellent example in the school", who is "academically doing a complete turn around from his prior record."[4] Jordan has earned average or better than average grades since his enrollment at Snider.

Jordan was a member of the 1991–1992 Snider basketball team, earning recognition as an all-conference player. Jordan wished to play on Snider's basketball team for the current school year, but due to IHSAA Rule 12 (the so-called "eight semester rule"), Snider Principal, Dennis McClurg, sought an IHSAA ruling on Jordan's eligibility. Despite McClurg's pleading on Jordan's behalf, the IHSAA determined Jordan was ineligible for both 1992–1993 semesters, and that no waiver of the eligibility rule or change in the rule would be granted. The Executive Committee of the IHSAA denied Jordan's request for relief from that decision after a hearing on January 8, 1993. At this point in the school year, the Indiana high school basketball season is well underway.

Ms. Jones testified that she does not have the financial means to provide a college education for her son. Jordan's coach at Snider, Jim Rousseau, testified that Jordan has had a few "inquiries" from college basketball coaches, but as yet, has received no scholarship offers. Rousseau added that if Jordan is able to complete the remainder of the basketball season, due to Jordan's athletic skills, he will receive a college scholarship.

2. Jordan's Marshall Metro transcript indicates that by the end of the first semester of his third year, Jordan had failed fifteen subjects, earned a "D" grade in six subjects, and earned a "C" in eight subjects. The only class in which Jordan earned a grade which was better than a "C" at Marshall Metro was music class, where he earned a "B" for one semester, and an "A" another semester. One telling statistic which comments on the academic and social environment from which Jordan moved, is that despite his academic performance, at the end of his second year at Marshall Metro, Jordan ranked 216 out of 675 students in his class. Another sad fact relating to Jordan's previous environment is that there were 823 students in Jordan's ninth grade class (the graduating class of 1992), but by the time Jordan dropped out in the eleventh grade, only 386 students remained enrolled in the class of 1992 at Marshall Metro.

3. Jordan's mother, Doretha Jones, reported that she moved her son from Chicago to Fort Wayne because of her health (she had recently endured brain surgery), her unemployment, and because of the neighborhood and school environment near Marshall Metro. Ms. Jones described Marshall Metro and the neighborhood where the family lived as the all-too familiar, gang-infested, drug plagued, "war zones" which many of the impoverished areas in our large cities have become. As the IHSAA acknowledges, there is no evidence that the decision to move from Chicago to Fort Wayne was motivated by athletics.

4. In describing Jordan as a "leader" with "a positive attitude", Principal McClurg, declared, "Probably, in my experience in schools with athletics, over 27 years in schools and 12 years in administration, I've never met a young man that I would say has impressed me the way Herman impressed me."

## CONCLUSIONS OF LAW

Jordan attacks the IHSAA's eligibility decision on three grounds: First, as an equal protection violation under the United States Constitution; second, as a similar violation under the Indiana Constitution; and third, as an "arbitrary and capricious" decision in violation of state law regarding voluntary associations. The IHSAA argues that on each of the three prongs of Jordan's attack, the court has no jurisdiction. The court will address the IHSAA's arguments regarding jurisdiction in turn, as the court addresses each of the three arguments which Jordan advances.

### State Constitutional Claim

Jordan asserts that the IHSAA decision violates Art. I, § 23 of the Indiana Constitution. The IHSAA argues that Art. I, § 23 does not apply to the IHSAA, and therefore, its decisions are not judicially reviewable when challenged on the basis of that particular section of the state Constitution.

In 1972 the Indiana Supreme Court held that the IHSAA decisions are judicially reviewable under Art. I, § 23. *Haas v. South Bend Comm. School Corp.*, 259 Ind. 515, 289 N.E.2d 495, 497 (1972). In *Haas*, the court specifically held that one of its previous cases "should be overruled insofar as it holds that the actions of the IHSAA are not judicially reviewable." *Id.*, 289 N.E.2d at 497. In asserting that this court has no jurisdiction to review the IHSAA's decision regarding Jordan's eligibility, the IHSAA essentially asks this court to determine that the *Haas* decision is in error. The ability of courts to review IHSAA decisions is no longer a matter of serious debate in the Indiana courts. Since *Haas*, IHSAA decisions have often been reviewed in the courts of Indiana; in fact, the court's research has revealed that several cases involving such review by the Indiana appel-

late courts have been published. As recently as two months ago, the Indiana Court of Appeals reaffirmed the *Haas* decision by reviewing the Federal and State constitutional soundness of an IHSAA decision. *Thomas v. Greencastle Comm. School Corp.*, 603 N.E.2d 190 (Ind.App. 1992).

Art. I, § 23 of Indiana's Constitution provides:

The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, cannot equally belong to all citizens.

The IHSAA maintains that this provision of the state Constitution applies only to limit the conduct of the Indiana "General Assembly", and does not limit the conduct of other entities which may be considered "state actors" under the analysis employed in cases alleging violations of the Fourteenth Amendment of the United States Constitution.[5] The IHSAA argues that although many Indiana cases have held that the rights protected by the Fourteenth Amendment and Indiana's Art. I, § 23 are identical, no Indiana Supreme Court case has specifically held that Fourteenth Amendment state action analysis applies to the "General Assembly" language of Art. I, § 23.

■ The IHSAA is indeed correct when it says that many Indiana cases have held that identical rights are protected by the Fourteenth Amendment and Indiana's Art. I, § 23. *See, Haas*, 289 N.E.2d at 501 ("It is well established that the rights intended to be protected under both constitutional provisions are identical."); *IHSAA v. Raike*, 164 Ind.App. 169, 329 N.E.2d 66, 71, n. 2 (1975); *State ex rel. Miller v. McDonald*, 260 Ind. 565, 297 N.E.2d 826, 829 (1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 111 (1974); *Schafer*, 598 N.E.2d at 554, n. 9; and *Thomas*, 603

---

5. The "state actor" analysis is necessary because the Fourteenth Amendment and Art. I, § 23 do not provide a shield against wholly private conduct, regardless of "how unfair that conduct may be." *IHSAA v. Schafer*, 598 N.E.2d 540, 547 (Ind.App.1992), *quoting NCAA v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461, 102 L.Ed.2d

469 (1988). These two Constitutional provisions confer protection against the action of an otherwise private party only when "the State [is] sufficiently involved to treat that decisive conduct as state action." *Schafer*, 598 N.E.2d at 547, *quoting Tarkanian*, 488 U.S. at 192, 109 S.Ct. at 462.

N.E.2d at 191, n. 3. By necessary implication, in each of these five cases, the Indiana courts construed the Art. I, § 23 "General Assembly" language as incorporating essentially the same concept as is involved in determining whether an entity is a state actor for purposes of the Fourteenth Amendment. And, in each case but *McDonald*, 297 N.E.2d 826, the court found or assumed that the IHSAA engages in state action for purposes of the Fourteenth Amendment and Art. I, § 23. The *McDonald* court recognized the fact that municipal ordinances are not enacted by the General Assembly, but nonetheless held that such municipal ordinances are subject to Fourteenth Amendment and Art. I, § 23 scrutiny. *Id.*, 297 N.E.2d at 829. In *Raike*, the court affirmed an injunction against enforcement of an IHSAA eligibility decision. There, the court found that the IHSAA engages in "state action", *Id.*, 329 N.E.2d at 71, n. 3, and that the eligibility rule in question violated equal protection under the Fourteenth Amendment and Art. I § 23. *Id.*, 329 N.E.2d at 79.

In *Schafer*, the Indiana Court of Appeals found that because the IHSAA violated equal protection and substantive due process requirements of the Fourteenth Amendment and Art. I § 23, the trial court was proper in enjoining the IHSAA from enforcing a determination that Schafer was ineligible. *Id.*, 598 N.E.2d at 558. In that case, the court conducted an extensive analysis of recent United States Supreme Court teaching on determining whether an entity engages in state action,[6] and found that the "IHSAA in making and in enforcing its rules engages in state action subject to judicial review." *Id.*, 598 N.E.2d at 547–550.

Furthermore, albeit not yet in the form of a conclusive command, the Seventh Circuit has weighed in on the issue of whether the IHSAA engages in state action. In *Crane*, although the majority did not discuss federal constitutional principles in affirming the injunction against IHSAA enforcement of an eligibility decision, Judge Posner addressed the issue of state action in his dissent, declaring: "The Indiana High School Athletic Association [is] composed primarily of public schools—so its actions, I agree, are state action...." *Crane*, 975 F.2d at 1326 (Posner, J., dissenting), *citing* n. 13 of the Supreme Court's *Tarkanian* decision.[7]

The court is not persuaded by the IHSAA's argument that the Indiana courts have wrongly relied upon "the general statements as to the similarity of the analysis under both [the Fourteenth Amendment and Art. I, § 23]," and have not sufficiently considered the "General Assembly" language of Art. I, § 23. IHSAA's "Brief in Support of Motion to Dismiss", at 12 (emphasis deleted). For twenty-one years the Indiana courts have held that in making and in enforcing rules, the IHSAA engages *in action which must comport to Art. I, § 23* of the Indiana Constitution. This court declines the IHSAA's offer to declare twenty-one years of Indiana Supreme Court teaching invalid.

**6.** In *Schafer*, the Indiana Court of Appeals addressed the Supreme Court's present state action analysis as explained in *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); and *Tarkanian*, 488 U.S. 179, 109 S.Ct. 454.

**7.** The IHSAA also complains that the courts should not be involved in oversight of IHSAA matters, quoting the following passage from *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988): "[T]he education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local officials, not of federal judges." The court wholly agrees with this basic premise. However, in *Hazelwood*, the Supreme Court's ensuing remarks explained that although the decisions of school officials are entitled to substantial deference, those decisions may be subject to judicial review for violations of protected rights. *Id.*, 484 U.S. at 273, 108 S.Ct. at 571. The IHSAA fails to appreciate that this language from *Hazelwood* actually supports the conclusion that the IHSAA is a state actor. In citing this passage as support, the IHSAA necessarily implies that the IHSAA is involved in "the education of the Nation's youth"; yet it overlooks the fact that education of the Nation's youth "is primarily the responsibility of ... state and local officials." Since the IHSAA controls an area of regulation which has traditionally been a matter for "state and local officials", the IHSAA a "state actor."

■ The Indiana appellate cases examining IHSAA rulings on equal protection grounds have adopted a two-step process, first utilizing the traditional equal protection analysis to determine which standard of scrutiny applies to the IHSAA rule. When the challenged classification is not based upon suspect characteristics or does not involve a fundamental right, low level scrutiny applies, and the court must determine whether the classification bears a rational relationship to a legitimate government purpose. *Thomas*, 603 N.E.2d at 192–193; and *Schafer*, 598 N.E.2d at 552–553; *see also, Griffin High School v. Illinois High School Ass'n*, 822 F.2d 671, 674 (7th Cir.1987) (the customary standard of review for a regulation challenged on equal protection grounds is the "rational basis" test). Jordan does not argue that he has a constitutionally protected fundamental right to play basketball, and thus, he does not argue for the traditional heightened scrutiny which would apply to fundamental rights.[8]

However, instead of terminating the inquiry after finding that the IHSAA rule has a rational relationship to a legitimate governmental purpose, the Indiana courts have taken the test one step further than the analysis traditionally employed in the federal courts. This second step entails a determination of whether the IHSAA rules are narrowly tailored to the purpose of the rules, or whether the rules "sweeps too broadly in their prescription." *Sturrup v. Mahan*, 261 Ind. 463, 305 N.E.2d 877, 881 (1974); *Thomas*, 603 N.E.2d at 193; *Schafer*, 598 N.E.2d at 552. This analysis has been referred to as a "modified rational basis test", or "overbreadth scrutiny." *Thomas*, 603 N.E.2d at 192–193.

■ The Indiana courts in *Sturrup*, *Schafer* and *Thomas*, as well as others, purported to have applied this test to IHSAA actions under both the United States and Indiana Constitutions. However, this "overbreadth scrutiny" or "modified rational basis test" is not part of the

United States Supreme Court's teaching in the area of equal protection. *See, Griffin High School*, 822 F.2d at 674; and *Schafer*, 598 N.E.2d at 553. The courts of Indiana may, however, determine the appropriate analysis applicable to issues which arise under the Constitution of that state, even if such analysis is not in harmony with the United States Constitution. *See, Schafer*, 598 N.E.2d at 554, n. 9; *Brady v. State*, 575 N.E.2d 981 (Ind.1991) (videotape testimony of child witness in child molestation criminal prosecution did not violate right to confront accusers found in the Sixth Amendment to the United States Constitution, yet did violate the right to confront accusers found at Art. I, § 13 of Indiana Constitution); *see generally*, Baude, *Is There Independent Life in the Indiana Constitution?*, 62 Ind.L.J. 263 (1987) (citing several examples of rights found under the Indiana Constitution which extended beyond the reach of similar provisions in the federal Constitution); Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv.L.Rev. 489 (1977); and Levinson, *State and Federal Constitutional Law Developments Affecting Indiana Law*, 25 Ind.L.Rev. 1129 (1992) (recognizing that in Indiana, as in many states, courts are increasingly likely to find that state Constitutions "provide a separate and independent source of rights" as compared with the United States Supreme Court's narrowing the scope of the federal Constitution).

The distinction between the United States and Indiana Constitutions have also been emphasized in law review articles authored by Chief Justice Randall Shepard of the Indiana Supreme Court. Chief Justice Shepard underscored these distinctions by commenting that "the Indiana Constitution provides a great variety of protections for citizens which are not contained in the Federal Bill of Rights", and by noting that many provisions of the state Constitution "clearly provide occasions when a litigant who would lose in federal court [under the federal Constitution] may win in state

---

**8.** Although the court would not find it entirely astonishing if, in the basketball obsessed State of Indiana, a party would argue for recognition of a constitutionally protected fundamental right to play basketball.

court [under the state Constitution]." Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind.L.Rev. 575, 580–583 (1989); *see also*, Shepard, *Indiana Law, the Supreme Court, and a New Decade*, 24 Ind.L.Rev. 499, 504–507 (1991).

In *Schafer*, the Indiana Court of Appeals noted that Indiana's practice of subjecting rules which are rationally related to a legitimate government purpose to overbreadth scrutiny is "out of the mainstream of case law on equal protection analysis", but nonetheless, stated that such analysis would apply to Indiana's Constitution even if such analysis was found improper for application of the federal Constitution. *Id.*, 598 N.E.2d at 553. The "overbreadth scrutiny" which is applied to IHSAA decisions, which decisions would otherwise normally pass federal constitutional muster under the "rational relationship" test, is an example of the broader protection of individual rights found under the Indiana Constitution, of which Chief Justice Shepard and Justice Brennan, and Professors Baude and Levinson spoke.

The rule which the IHSAA relied upon to declare Jordan ineligible, Rule 12, concerns "enrollment and attendance". The preamble to Rule 12 states the "Philosophy" or spirit of the rule:

> In an effort to eliminate the odious practice of red shirting and to discourage any and all decisions which subordinate academic decisions to athletic decisions, the following rules are promulgated.

Rule 12–3 provides that a student loses further eligibility to participate in fall semester athletics "after being enrolled 16 or more school days in each or four fall semesters"; and similarly, Rule 12–4 provides that a student loses further eligibility to participate in spring semester athletics "after being enrolled 16 or more school days in each or four spring semesters." Rule 12 also provides a relief procedure for students who were forced to leave school for health reasons during a semester. But otherwise, according to Rule 17–8.1, Rule 12 cannot be waived for hardship reasons.

In *Sturrup*, the Indiana Supreme Court found that IHSAA eligibility rules regarding students transferring from one school to another were constitutionally "unreasonable" when they swept too broadly and created an over-inclusive class. *Id.*, 305 N.E.2d at 881. There, the court condemned the rule as overbroad because it automatically would render ineligible all students who technically ran afoul of the rule, although all students would not necessarily violate the legitimate "purported purpose" of the rule. *Id.*, 305 N.E.2d at 881. The court denounced the IHSAA's "irrebuttable conclusion of law" that all students who technically fell within the rule's parameters committed "despicable and odious ... practices." In *Schafer*, the court struck down IHSAA's application of Rule 12 (at issue presently) and Rule 18 (scholastic eligibility) as sweeping too broadly, when there was no evidence that the student intended to circumvent the rule in order to gain an athletic advantage or to subordinate academic decisions to athletic decisions, as proscribed by the rules. *Id.*, 598 N.E.2d at 554. In fact, the court found that the behavior which resulted in the IHSAA's determination of ineligibility "was actually in the student's best interest academically." *Id.*, 598 N.E.2d at 554.

■ Although Rule 12 is rationally related to the legitimate state interests of "eliminat[ing] the odious practice of red shirting and ... discourag[ing] any and all decisions which subordinate academic decisions to athletic decisions", the rule "sweeps too broadly in [its] prescription," as demonstrated by Jordan's dilemma. The IHSAA admits, and the court agrees, that Jordan did not "redshirt", and that in moving to Fort Wayne, Jordan did not subordinate an academic decision to an athletic decision. In fact, similar to the actions which resulted in ineligibility in the *Schafer* case, Jordan's decision to move to Fort Wayne has turned out to have been an excellent decision when viewed strictly in terms of academics, and has overwhelmingly been in Jordan's best interest academically. The IHSAA claims, however, that Rule 12 also serves three additional goals which are not stated in the explanatory "Philosophy" statement of Rule 12.

The IHSAA argues that, in addition to preventing both "redshirting" and the relegating of academic decisions to a subordinate role, Rule 12 serves the following three goals: First, the rule "creates interscholastic athletic opportunit[ies] for younger students"; second, the rule "promotes competitive equality" by preventing "teams of more veteran athletes" from competing against teams without "such veteran athletes"; and third, the rule promotes the health and safety of student athletes by preventing "teams of more skilled and mature athletes" from competing against teams without "such skilled and mature athletes."

These three additional interests all concern chronological maturity, and are legitimate state interests which are rationally related to another IHSAA rule. At Rule 4, the IHSAA has the following age limitation rule:

A student who is or shall be nineteen (19) years of age prior to [August 15] shall be ineligible for interscholastic athletic competition during all of the sports contest seasons of the ensuing school year.

The age limitation of Rule 4 appears rationally related to the three additional chronological maturity interests which the IHSAA cites in support of its decision to disqualify Jordan. However, Jordan has not exceeded his eligibility pursuant to the age rule. In fact, based solely upon the age limitation of Rule 4, Jordan would be eligible to participate in interscholastic athletics *next year*, in the 1993–1994 school year. Since the chronological maturity interests are addressed in a straightforward manner in Rule 4, they appear as superfluous baggage when presented in the IHSAA's after-the-fact attempt to graft them to Rule 12 as support of its decision to disqualify Jordan. As these additional chronological maturity interests are directly addressed in Rule 4, they are not rationally related to Rule 12, and do not sustain the IHSAA's overbroad application of Rule 12 as to Jordan and any others who may be similarly situated.

*State Law "Voluntary Associations" Claim*

Jordan invokes Indiana's law of voluntary associations in seeking to prevent the IHSAA from enforcing its decision declaring him ineligible for athletic competition. Jordan alleges the IHSAA decision was "arbitrary and capricious" and in violation of the IHSAA's own rules. In *Haas*, the Indiana Supreme Court found that the IHSAA was a voluntary association that also engaged in state action. *Id.* 289 N.E.2d at 497–498. On the basis of Indiana's law of voluntary association, the Seventh Circuit recently affirmed an injunction against the IHSAA in a student transfer eligibility case. *See, Crane,* 975 F.2d at 1326.

Indiana law generally counsels against judicial interference in the internal affairs of voluntary associations. *Crane,* 975 F.2d at 1319; *Randolph v. Leeman,* 129 Ind.App. 134, 146 N.E.2d 267, 273 (1957). As Judge Manion observed, however, the exceptions to the rule of judicial nonintervention "virtually consume this general rule." *Crane,* 975 F.2d at 1320. Among the reasons justifying court intervention into the affairs of voluntary associations include ensuring that such associations do not impair civil and property rights. *Crane,* 975 F.2d at 1320; *United States Auto Club, Inc. v. Woodward,* 460 N.E.2d 1255, 1260 (Ind.App.1984); *State ex rel. Givens v. Superior Court of Marion County,* 233 Ind. 235, 117 N.E.2d 553, 555 (1954). Courts will also intervene when such associations fail to follow their own rules, and will intervene as necessary to protect against fraudulent, collusive, unlawful, arbitrary, capricious, discriminatory, or malicious use of the power entrusted to such associations. *Crane,* 975 F.2d at 1320; *Woodward,* 460 N.E.2d at 1260 (the principle of judicial non-interference does not bar judicial review of voluntary associations in the face of a "violation of some property right, or proof that the rule was applied in an arbitrary, discriminatory, or malicious manner."); *Randolph,* 146 N.E.2d at 273 (court intervention not warranted "in the absence of mistake, fraud, collusion, or arbitrariness").

IHSAA decisions regarding eligibility may be set aside if the IHSAA acted "arbitrarily and capriciously" in making the decision. *Crane*, 975 F.2d at 1320; *Kriss v. Brown*, 180 Ind.App. 594, 390 N.E.2d 193, 202 (1979); *Schafer*, 598 N.E.2d at 554. Although the right to participate in interscholastic athletics is not a fundamental civil right, once the program of interscholastic athletics has been provided, it must be administered in a reasonable manner. *Haas*, 289 N.E.2d at 498. An arbitrary and capricious application of IHSAA eligibility rules may justify injunctive relief. *Crane*, 975 F.2d at 1326; *Schafer*, 598 N.E.2d at 554; *Haas*, 289 N.E.2d at 501.

In *Schafer*, the court found that the IHSAA's application of its academic performance requirement rule was "arbitrary and capricious" when there was no evidence that the student's technical violation of the rule was intended to circumvent the purpose of the rule (gaining an athletic competitive advantage). *Id.*, 598 N.E.2d at 554. In *Crane*, the Seventh Circuit found that the IHSAA's application and *ad hoc* interpretation of eligibility rules was arbitrary. *Id.*, 975 F.2d at 1325. That court upheld the district court's permanent injunction against the IHSAA because the rule was poorly drafted and because the IHSAA applied the rule to students even when there is no evidence that students intend to gain an advantage in athletic competition by a technical violation of the rules. *Id.*, 975 F.2d at 1325.

Jordan did not violate the expressed reasons for Rule 12. He did not commit the "odious practice" of redshirting, and his move to Fort Wayne was not motivated by the desire to subordinate an academic decision to an athletic decision. And although Jordan did not commit such "odious" practices, the IHSAA nevertheless employed its Rule 12 to disqualify him. Jordan's decision to move to Fort Wayne has been a great benefit for him academically, and has redeemed Jordan from an almost certain future filled with the frustration of not having the educational background to successfully compete in the employment market. The IHSAA's application of Rule 12,

and its determination of ineligibility flies in the face of the stated justification for Rule 12, and therefore, the court finds that the IHSAA's disqualification of Jordan is arbitrary and capricious. Furthermore, the three chronological maturity interests which the IHSAA alleges justify its application of Rule 12 to this case are directly addressed in Rule 4, and again evidence the IHSAA's arbitrary application of Rule 12 to Jordan.

Accordingly, the court finds it necessary to intervene in this matter to prevent the IHSAA from further enforcement of its arbitrary and capricious disqualification of Herman Jordan.

### Federal Constitutional Claim

Jordan has likewise alleged that the IHSAA action violates equal protection under the Fourteenth Amendment of the United States Constitution. As discussed in the above section regarding Jordan's claim under Art. I, § 23 of the Indiana Constitution, Indiana's practice of subjecting equal protection and procedural due process claims to "overbreadth scrutiny" is not harmonious with the analysis of claims brought pursuant to the Fourteenth Amendment of the United States Constitution. *See, supra* at p. 1378; *see also, Griffin High School*, 822 F.2d at 674; and *Schafer*, 598 N.E.2d at 553. Jordan does not argue that he has a constitutionally protected fundamental right to play basketball, and admits that the "rational basis" test applies (although he asserts the "overbreadth scrutiny" enlarges that test).

The court will not apply the "overbreadth scrutiny" to Jordan's Fourteenth Amendment claim. Rule 12 is rationally related to the legitimate state interests of preventing "redshirting" and preventing the subordination of academic decisions to athletic decisions. Applying the "rational basis" test, and not expanding federal constitutional doctrine to include the "overbreadth scrutiny" of Indiana constitutional doctrine, the court finds that Jordan has no claim under the United States Constitution.

### CONCLUSION

Accordingly, the court finds that: Herman Jordan has no adequate remedy at

law, as the amount of money damages which may result from his further disqualification are not readily ascertainable and could not adequately compensate him for the lost opportunity to participate in interscholastic athletics for the remainder of this school year; that Herman Jordan will suffer irreparable injury if, due to the IHSAA ruling on ineligibility, he is not able to participate in the remainder of the basketball season; and that Herman Jordan is entitled to a permanent injunction against the defendants.

For foregoing reasons, the court ORDERS:

1. The plaintiff's motion for a permanent injunction against the defendants, the Indiana High School Athletic Association, Inc.; C. Eugene Cato, in his capacity as Commissioner of the Indiana High School Athletic Association, Inc.; R. Nelson Snider High School; and Dennis V. McClurg, in his capacity as Principal of R. Nelson Snider High School, to prevent the defendants from enforcing, implementing or carrying out any decision of the IHSAA made prior to the issuance of this Memorandum of Decision and Order, which decision of the IHSAA declared Herman Jordan ineligible to participate in interscholastic athletics, is GRANTED;

2. The defendants, and their officers, trustees, administrators, agents, employees, representatives, attorneys, successors, assigns, and all other persons in active concert or participation with them, or those who receive actual notice of this order, are hereby PERMANENTLY ENJOINED from enforcing, implementing or carrying out any decision of the IHSAA made prior to the issuance of this Memorandum of Decision and Order, which decision of the IHSAA declared Herman Jordan ineligible to participate in interscholastic athletics; and

3. The defendant's motion to dismiss is DENIED.